LAURA DRAPER ET AL., APPELLEES, V. SAMUEL T. CLAYTON
ET AL., APPELLANTS.

FILED JULY 9, 1910. No. 16,047.

1. **County Courts: JURISDICTION.** "A decree of the county court assuming to vest in a widow the absolute title to a homestead selected from the lands of her deceased husband is void as an exertion of power not granted by the constitution or laws of the state." *Finders v. Bodle*, 58 Neb. 57.

2. **Homestead, Setting Off: ESTOPPEL.** An *ex parte* order made upon a widow's application setting apart to her a homestead interest in the lands of her deceased husband will not estop his children residing at that time in the county where the homestead is situated, and who have not subsequently ratified the order or otherwise waived their right to object thereto. REESE, C. J., and SEDGWICK, J., dissent.

3. **Constitutional Law: VESTED RIGHTS.** Chapter 32, laws 1895 (Comp. St. 1909, ch. 23, sec. 29a), contravenes section 3, art. I of the constitution of the state of Nebraska, and is null and void.

4. **Guardian and Ward: ACTS OF GUARDIAN: ESTOPPEL.** An infant's guardian by giving a receipt for money not received by her, but purporting to have been received in satisfaction of the ward's share of a surplus over and above the appraised value of the infant's ancestor's homestead, in proceedings prosecuted under the "Baker act" (laws 1889, ch. 57), will not estop the ward from asserting his estate in said homestead.

5. **Quieting Title: HOMESTEAD: REMAINDERMAN: LIMITATIONS.** If a widow asserts, by virtue of a void order of the county court, a title in fee simple to a homestead selected from her late husband's lands, an infant child of the decedent ordinarily may at any time within ten years after attaining his majority maintain an action under sections 57-59, ch. 73, Comp. St. 1909, for the purpose of quieting his title in said land.

6. **Life Estates: INCUMBRANCES: PAYMENT BY LIFE TENANT.** Where a life tenant of real estate pays off a past due incumbrance which is a lien upon the entire estate, he is entitled to contribution from the remainderman, and should recover from him the difference between the principal debt and the present value of an annuity equal to the annual interest charge running during the years which constitute the life tenant's expectancy of life.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed in part and reversed in part.*

*Hainer & Smith,* for appellants.

*John J. Sullivan, George W. Ayres* and *John C. Martin,* contra.

ROOT, J.

This is an action in equity to confirm in plaintiffs title to a tract of land. Two of the plaintiffs were given partial relief, and the defendants appeal.

In 1880 Jasper Foster received a patent, under the federal homestead law, for the northeast quarter of section 30, in township 13, range 5 west, in Hamilton county. Foster occupied said real estate as his home until 1889, during which year he died intestate, leaving him surviving six children and his widow. At that time Foster held an executory contract for the purchase of the southwest quarter of the southeast quarter of section 19, in said town and range, and owed thereon about $100. An administrator was duly appointed for Foster's estate. Subsequently Foster's widow made application according to the provisions of chapter 57, laws 1889, to have the 40 acres of land above described and the north half of said northeast quarter of section 30 appraised as the homestead of her late husband and herself. The county court proceeded in conformity with the terms of said act, found that said 120 acres of land had been selected by Jasper Foster as his homestead, and that the petitioner was entitled to select said land as her homestead. Appraisers were appointed and their appraisal was confirmed by the county court. The widow elected to accept the land at its appraised value, and paid to her adult children their proportion of two-thirds of such value over and above a mortgage lien thereon and the $1,000 interest therein, which said act purports to grant a widow in her deceased

husband's homestead. She also receipted as guardian for the plaintiffs, her minor children, for their share of such surplus. The court then confirmed said proceedings. The widow thereafter claimed to own said real estate in fee simple. The defendants assert title thereto as her grantees. The appellees each represent a one-sixth interest in said land. The district court charged the land with the value of permanent improvements made thereon subsequent to Mr. Foster's decease, subrogated the appellants to the rights of the mortgagee for the amount due upon the mortgage at the time Foster died and subsequently satisfied by appellants' grantor, confirmed the appellants in the right to occupy and enjoy the north half of the northeast quarter of section 30 during the natural life of the widow, gave them credit for taxes paid upon the 40 acres in section 19, charged them with the rents and profits of said tract, and decreed that upon the payment by each appellee of a sixth part of the difference between the taxes paid upon said 40 acres and the value of said improvements, on the one hand, and the rental value of the 40 acres, on the other, the appellees should severally have a writ of assistance to place them in possession of their interest in said land, and, upon the death of Mrs. Foster, each appellee, upon payment of one-sixth of the amount due upon said mortgage at the date Foster died and chargeable against the 80 acres, should have a like writ to place him in possession of his interest in said real estate.

1. The appellants argue that the county court had authority, independently of chapter 57, laws 1889, to assign to the widow a homestead estate in the lands of her deceased husband, and, by decreeing an estate in fee simple instead of a life estate, the court merely committed an error, but its judgment is not void. The act of the legislature under which the county court assumed to set apart a homestead to Mrs. Foster was held unconstitutional and void subsequent to the proceedings herein considered. *Trumble v. Trumble,* 37 Neb. 340.

Section 16, art. VI of the constitution, provides, among other things, that "county courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlements of estates of deceased persons, * * * and such other jurisdiction as may be given by general law. But they shall not have jurisdiction * * * in actions in which title to real estate is sought to be recovered, or may be drawn in question." At the time the county court of Hamilton county assumed to confirm in Mrs. Foster a title in fee simple to the land described in this action, there was no statute, independently of the invalid act above referred to, purporting to give that court authority to set off or determine the boundaries or value of a homestead. Section 22, ch. 20, art. I, Comp. St. 1909, was then in force and provided, as it does now, that all writs, notices, orders, citations and other process issued out of the county court should be served in like manner as a summons in a civil action in the district court, and authorized that court to direct the service of a writ by publication, where personal service could not be made in the state, and in the cases specifically provided by law.

By the terms of chapter 36, Comp. St. 1909, the head of a family is authorized to select a homestead not to exceed 160 acres in extent and $2,000 in value, which shall be exempt from sale upon attachment or an ordinary execution. Section 17 of said chapter provides that the homestead, if selected during the lifetime of the owner of the fee, shall upon his or her death vest for life in the surviving spouse, remainder, if not otherwise devised, in the heirs of the fee-holding spouse, and the quality of exemption is continued as against the creditors of the deceased. It has ever been the policy of the legislature to exempt a homestead from forced sale upon attachment or ordinary execution. At the time the present constitution was prepared by the constitutional convention and adopted by the people, an act entitled "An act to exempt the homestead of families from attachment, levy, or sale upon execution or other process issuing out of any court in the

state of Nebraska" (laws 1875, p. 45), approved February
25, 1875, was in force.  By the provisions thereof the
homestead exemption was extended to the head of a
family, to his widow, to his infant children, and to any
unmarried child occupying the homestead after his de-
cease.  In case it became necessary to ascertain the extent
of the homestead, the district court, upon application by
any person interested, appointed appraisers to view the
premises and report concerning its value.  The appraisal
was conclusive unless complaint was made, and, in that
event, the court had power to order the premises re-
appraised.  Upon an application to the district court by
an executor or administrator to sell the decedent's land
for the payment of his debts, the court had authority to
appoint appraisers to set apart the homestead.

The constitution of 1866 (art. IV, sec. 4) provided that
probate courts should not have authority to "order or de-
cree the sale or partition of real estate," otherwise the
were to exercise such jurisdiction as might be provided
by law.  The constitution of 1875 is more positive in its
restraint upon the jurisdiction of that court.  The course
of legislation and the decisions of this court up to and
including 1875 give no indication that the county court
was vested with power to hear and determine an applica-
tion to establish the existence, limits or value of a home-
stead, but the district court was the forum wherein all
proceedings were prosecuted for the protection of that
estate.  In 1885, in *Guthman v. Guthman*, 18 Neb. 98,
this court held that a county court has authority upon a
widow's application to set apart from her deceased hus-
band's lands the homestead, if none of the facts essential
to create that estate are controverted.  The reasoning is
plain that the central fact to justify and support such an
order is that the designated land or some part thereof
constituted the homestead of the petitioner and her hus-
band at the time of his death.  This fact being made to
appear, the law determines the estate of the widow and
the interest of the remaindermen.  The opinion in *Guth-*

*man v. Guthman, supra,* has never been overruled or questioned by this court, but, on the contrary, has been approved and reaffirmed. *Tyson v. Tyson,* 71 Neb. 438; *In re Estate of Robertson,* 86 Neb. 490. The principle announced in *Guthman v. Guthman* is now a rule of property in Nebraska, and ought not to be doubted by practitioners or the courts. *Grandjean v. Beyl,* 78 Neb. 354. At the same time the rule should not be extended so as to justify the county courts in assuming to try and determine questions of title connected with an assertion of a homestead estate in the lands of a decedent. The jurisdiction of the probate court to cause a homestead to be appraised and set apart to the widow does not include the right to determine that the homestead estate is one in fee. In entering such a judgment the court would determine title, the very subject withheld from its jurisdiction by the fundamental law. We cannot therefore accept the argument of defendants' counsel that the order confirming in the widow a title in fee simple was one the court had jurisdiction to make.

2. It is contended that the county court had jurisdiction independent of the Baker act to cause Foster's homestead to be assigned to his widow, and that, since that court assigned the whole 120-acre tract, the district court should have respected the order in so far as it confirmed the appellants in an estate during the natural lifetime of the widow. The record shows that no notice was given to these appellants, who were then minors, except by publication for one week in a local newspaper. In the absence of a statute providing for such method of notice, this was unavailing to affect their title to the property. The testimony is undisputed that the 40 acres described in the contract was used for pasture, and was not included within the fence that inclosed Foster's federal homestead, and that the last described tract was improved and occupied by the decedent as his home at the time of his death. The district court committed no error in ignoring the proceedings in the county court.

3. It is contended that chapter 32, laws 1895 (Comp. St. 1909, ch. 23, sec. 29a), cured all defects inhering in the proceedings in the county court. The act purports to validate all proceedings prosecuted to judgment under the "Baker Act" before it was held invalid by this court. The appellees assail this curative act on the ground that it contravenes section 3, art. I of the constitution, which provides: "No person shall be deprived of life, liberty or property, without due process of law." It will be remembered that section 17, ch. 36, Comp. St. 1909, provides that in all cases where the owner of a homestead shall die intestate, the surviving spouse shall succeed to but a life estate therein, with remainder to his heirs. This statute was in force during the time the "Baker Act" appeared upon the statutes and still is the law in Nebraska, and the county courts have at all times been without power to transfer the remainderman's estate to the widow. If the curative act gave vitality to proceedings prosecuted under the invalid act, it amends the homestead law without mentioning or repealing it, or vests the county courts with jurisdiction prohibited by the constitution, and, without giving remaindermen their day in court, transfers their estates to their ancestor's widow. None of these things may the legislature lawfully do. The curative act is therefore void. *Maxwell v. Goetschius,* 11 Vroom (N. J.) 383; *Pryor v. Downey,* 50 Cal. 388; *Nelson v. Rountree,* 23 Wis. 367; *McCord v. Sullivan,* 85 Minn. 344; *Finlayson v. Peterson,* 5 N. Dak. 587; *Maguiar v. Henry,* 84 Ky. 1; *Conway v. Cable,* 37 Ill. 82.

4. The defendants urge that the plaintiffs are estopped from prosecuting this action because Mrs. Foster, as guardian for the plaintiffs, receipted for the share of the surplus created by her acceptance of the homestead at its appraised value which they would have received if the act were valid. The proof is undisputed that the appellees received no money or other consideration from their guardian. For this reason, they are not within the rule announced in *Mote v. Kleen,* 83 Neb. 585, and *Borcher v.*

32

*McGuire,* 85 Neb. 646. Nor does the principle announced in *Staats v. Wilson,* 76 Neb. 204; apply in the case at bar.

5. Finally, the defendants argue that the plaintiffs' laches should bar them from equitable relief. *Hawley v. Von Lanken,* 75 Neb. 597, is cited. The instant case is ruled by *Holmes v. Mason,* 80 Neb. 448, and *Hobson v. Huxtable,* 79 Neb. 334, 340. Appellees commenced their action within ten years of the date the elder attained his majority. A consideration of the facts in *Hawley v. Von Lanken, supra,* will satisfy the reader that the principle of estoppel was wisely and lawfully applied to defeat the plaintiff in that action. In the case at bar the appellees were infants, the younger but three years of age, when Jasper Foster died. Neither before nor after attaining majority have they, so far as the record discloses, done anything in the premises to in any manner mislead or prejudice the defendants, nor has there been an instant of time subsequent to the date the widow claimed to own the land in fee simple, that she or any of her grantees could have prosecuted any proceeding to lawfully divest the appellees of their title. The defenses of estoppel must therefore be resolved against the defendants.

6. The defendants say that, although they may not be vested with an estate in fee simple to the 80 acres, they are life tenants, and the court erred in postponing the collection of the mortgage lien to which they are subrogated by the court's decree. We think there is merit in this contention. The mortgage constituted a lien upon the remaindermen's as well as upon the life tenant's estate. Before the maturity of the debt it was the duty of the life tenant, at least to the extent of the rental value of the property, to keep down the annual interest, but he was not compelled to pay off the principal sum when it became due or thereafter. When he satisfied the mortgage, he had a right to an accounting with the remaindermen. *Downing v. Hartshorn,* 69 Neb. 364. Where a common charge rests upon a fund which belongs to several

owners by simultaneous but unequal titles, and the entire charge is paid by one owner, he may call upon the other owners for contribution. In cases like the one at bar, where one estate is for life and the other in remainder, and the life tenant pays the lien, to the extent that he has relieved his estate of the interest charge he has paid his own debt, and the excess is the debt of the remainder-men. The uncertainty of the duration of the tenant's life injects an element of doubt into the problem, but, by adopting a standard life table, a calculation definite enough for the purposes of the law may be made. The payment of the life tenant of the present worth of an annuity equal to the annual interest running during his expectancy of life represents his individual indebtedness, and the remainder, after subtracting that sum from the mortgage debt, is the share which the remaindermen should contribute. In the instant case the rule should be applied as of the date the computation shall be made; the widow's expectancy of life should be considered, and not the expectancy of the appellants. *Tindall v. Peterson*, 71 Neb. 166; 3 Pomeroy, Equity Jurisprudence (3d ed.) sec. 1223; *Thomas v. Thomas*, 17 N. J. Eq. 356. The rule adopted by the district court may not work much hardship to the defendants, but it is their lawful right to have immediate contribution. The evidence will not justify us in making that computation.

For the reasons above stated, the decree of the district court is in all things, save and except as to the subject of contribution, affirmed, and as to the matter of contribution, the cause is reversed and remanded for further proceedings. The costs taxed in this court will be equally divided between the appellees on the one part and the appellants on the other.

JUDGMENT ACCORDINGLY.