## REED'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13793.

United States Court of Appeals
Eighth Circuit.

Dec. 28, 1948.

---

■■■■■■■■■■

Edgar M. Morsman, of Omaha, Neb. (Henry E. Maxwell, and Morsman & Morsman, of Omaha, Neb., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The taxpayer's petition here is to review a decision and order of the Tax Court entered on stipulated facts which upholds assessment of estate tax against the estate of Mary M. Reed, deceased, in respect to the corpus of a trust fund of the value of $344,900.18 which was derived from one-third of the estate of her husband Byron Reed, who died at Omaha on June 6, 1891. His estate of real and personal property was valued at $1,810,385.97. He left surviving him his widow, Mary M. Reed, and their two children, Abraham L. Reed and Maria Johnson, and by the terms of his will that are relevant here he directed that his estate be divided between his two children and that the widow should receive only the dower right to a life interest in one-third of the estate. That provision to the widow conflicted with a Nebraska statute enacted some two years before his death, the so-called Baker Decedent Act, Ch. 57, Laws of Nebraska 1889, which if it was valid vested in her a one-third of her deceased husband's estate absolutely instead of the life interest in one-third specified in the will. She accordingly claimed the right to full ownership of the one-third. The children believed the statute to be invalid, and that the Nebraska law of descent as it stood before the enactment of the statute which vested a dower right only in the widow remained controlling, and that the whole estate belonged to them, subject only to the widow's dower right to a life interest in one-third. The controversy was clearly defined and was real and substantial, but the parties did not submit it to judicial determination. They were all of age and competent persons and between them owned all of the estate and were, therefore, entitled to fix by their agreement the share to be allowed to each one in its distribution. In order to avoid litigation, they joined in a compromise settlement of the conflicting claims to the ownership of the right of remainder in the one-third of the estate whereby the widow, in lieu of the absolute ownership of the one-third claimed by her, accepted the sum of $100,000 out of the one-third for herself absolutely, and the income for her life on the balance of the one-third, together with a restricted power in her to designate by her will from among the lineal descendants of herself and her husband successors to the balance of the one-third of the estate remaining at her death. Except as it was modified by these additions to the widow's dower right, the remainder right of the two children to one-third of the estate at her death was fully preserved to them in the compromise settlement of the controversy. After the settlement was made Mary M. Reed lived more than fifty years, and having received the agreed sum of $100,000 for herself absolutely out of the one-third of the estate, she enjoyed the income derived from the balance thereof as it accrued from time to time up to her death. She died testate at Omaha on March 5, 1943, without exercising the restricted power of appointment by will which it was agreed in the settlement that she should have, and upon her death the corpus of the trust fund of $344,900.18 here involved, representing the one-third of the estate of Byron Reed with its accretions, less deductions, then remaining was duly vested by decree of the court of competent jurisdiction in his two children, Abraham L. Reed and Maria Johnson, who are now living.

The Tax Court decided, rightly as we think, that the three competent persons who together owned the whole estate of the decedent Byron Reed could agree upon and control its distribution among themselves, and that they had done so by a compromise settlement entered into by them. But it

concluded from the form of the proceedings which were adopted on behalf of the parties to evidence and carry their settlement agreement into effect, that Mary M. Reed became the owner of the one-third of the estate and that the certain trust instrument purporting to convey the one-third to trustees, dated January 28, 1893, signed by her in the course of carrying out the settlement, amounted to a taxable transfer by her as owner of the said one-third of the estate, and that the restricted power of appointment by will accorded to her in the settlement agreement and set forth in the trust instrument resulted in the amount of the corpus of the trust becoming includable in and taxable to her estate under Section 811 (d) (2) I.R.C., 26 U.S.C.A. § 811(d) (2).[1]

The taxpayer contends that the conclusion of the Tax Court upon the stipulated facts that Mary M. Reed became the owner of one-third of her deceased husband's estate was clearly erroneous. That she never was actually or in fact such owner nor in position to and she did not make a transfer of said property within the intendment of the statute. That the Tax Court was in error in upholding a tax against her estate in disregard of her actual and real relation to the property in which at the time she made the compromise and signed the trust instrument she had actually a dower or life estate and no more.

The opinion of the Tax Court is reported in 10 T.C. 537, and it is to be read in connection with this opinion. It contains detailed portions of the stipulated matter we have deemed it unnecessary to repeat.

Opinion.

Section 811(d) (2), I.R.C., in effect at the death of Mary M. Reed on March 5, 1943, under which the Tax Court has upheld the tax assessment here related to transfers by decedents of real and actual "interests in property" owned by them. Admittedly the taxability of the estate of the deceased widow in this case depends on whether she ought to be deemed to have been the owner of one-third of the estate of her deceased husband Byron Reed.

It stands out plain in the record that she did not inherit one-third of the estate under the Nebraska law. As finally settled by the Supreme Court of the state, that law vested in her only the right to dower.[2] A one-third certainly did not devolve upon her under the will of Byron Reed which he drew with care to prevent that consequence. The children to whom the will devised the

---

[1] Internal Revenue Code:

"Section 811. Gross Estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States

\* \* \* \* \* \*

"(d) Revocable transfers

\* \* \* \* \* \*

"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in. money or money's worth.,

\* \* \* \* \* \* "

[2] On June 29, 1893, the Supreme Court of Nebraska in Trumble v. Trumble, 37 Neb. 340, 55 N.W. 869, declared the Baker Decedent Act of 1889, chapter 57, Laws of Nebraska 1889, to be unconstitutional and of no effect. Hence, the old dower law under which the widow was not an heir of her deceased husband remained in effect, notwithstanding the passage of the Baker Decedent Act of 1889.

The Nebraska legislature thereupon in 1895 passed a further act, chapter 32, Laws of Nebraska 1895, purporting to cure the unconstitutional basis of the Baker Decedent Act of 1889, chapter 57, Laws of Nebraska 1889, and purporting to confirm all probate orders entered under that 1889 Act. The Supreme Court of Nebraska, however, in Boales v. Ferguson, 55 Neb. 565, 76 N.W. 18; Finders v. Bodle, 58 Neb. 57, 78 N.W. 480; Helming v. Forrester, 87 Neb. 438, 127 N.W. 373; Draper v. Clayton, 87 Neb. 443, 127 N.W. 369, 29 L.R.A.,N.S., 153; and McFarland. v. Flack, 87 Neb. 452, 127 N.W. 375, adhered to its opinion in Trumble v. Trumble, supra, that the Baker Decedent Act of 1889, supra, was unconstitutional, and it further held that all decrees entered by Nebraska courts

estate and in whom the law of Nebraska vested it, never conveyed it to her by any deed of conveyance. And it is equally evident that after the controversy between the two heirs and herself was settled by agreement she had from the one-third of her husband's property in actual enjoyment only the $100,000, her income for life and the restricted power of appointment she never used.

Obligation for the tax against her estate therefore has been asserted solely on account of matters of form and procedure through which the conflict between the claim of the widow and the claim of the two heirs resulting from the uncertain state of the Nebraska law and the provisions of Byron Reed's will was resolved by agreement and by means of which the respective parties were brought into the enjoyment of that share of the estate which it was mutually agreed that he or she would enjoy.

■ It appears that when the three parties entitled to share Byron Reed's estate decided to compromise their controversy over its distribution Byron Reed's will had been presented to the County Court [of Probate] and admitted to probate. The widow had filed in that court her refusal to take under the will and her demand to be awarded one-third of the estate absolutely and a decree of the County Court had been entered without contest finding her to be the owner absolutely of one-third of the estate under the Baker Decedent Act of Nebraska. The heirs had been allowed and had taken appeal to the District Court which was pending and had the effect of removing the whole controversy to that court to be there proceeded with de novo. The case of Trumble v. Trumble, 37 Neb. 340, 55 N.W. 869, in which the Supreme Court of Nebraska was expected to and did subsequently settle the question as to the validity of the Baker Decedent Act, was pending undetermined in that court. In substance, nothing had been done judicially except to advance the opportunity to the parties to submit the controversy be-

tween them for judicial determination. Therefore the decision of the parties to settle by compromise presented to them (or their counsel) the problem of choosing a form of procedure to effectuate their understanding. The need to identify and segregate the third of the estate from which the widow was to have her $100,000, and the income for life, and as to which she was to have restricted power of appointment was apparent as she was only 45 years old at her husband's death and had long expectancy, so that a trust to preserve the one-third was plainly indicated. The status of the case in court was such that it was open to the parties to use the record that had been made or to obtain some different form of decree in the District Court.

In that situation the three parties signed their agreement prescribing the trust to be created and the "placing in the hands of the trustees" of one-third of the estate and the payment by the trustees to the widow of the $100,000 outright and the payment of the income from the balance to her for life, and also the restricted power of appointment by her will which it was agreed that she should be accorded as well as vesting the remainder in the children at her death. In framing the agreement the parties chose to avail themselves of the court record that had already been made without contest, and they selected the widow to perform the function of "placing the property in the hands of trustees" and to that end they agreed that the decree of the County Court "shall stand as now made, each of said parties to receive a third of said estate."

■ Undoubtedly if those words of the agreement upon which the Tax Court relied, "each of said parties (naming them) to receive a third of said estate", are read by themselves as though they stood alone and expressed the entire agreement, it might be concluded that the parties had agreed to vest an absolute ownership of one-third of the estate in Mary M. Reed. But the true intent of the agreement must be drawn from the writing as a whole in

---

in pursuance of either the Baker Decedent Act of 1889, supra, or the curative act of 1895, chapter 32, Laws of Nebraska 1895, were void and of no effect, and

that the decrees could be attacked collaterally. The widow's right of dower was not amended until the Act of 1907, chapter 49, Laws of Nebraska 1907.

the light of the circumstances and purposes it was intended to serve. It is clear that the effect of selecting the widow to sign the trust instrument to place the property in the hands of trustees on the conditions agreed to by all the parties was to enable her to evidence by an instrument entitled to be recorded that she had relinquished the claim she had theretofore asserted to be the owner of the property and to specify over her signature the real and actual relationship to the property which she took in lieu of such ownership. It also fully accomplished the purpose of vesting in trustees the widow's dower or life interest, which belonged to her and which she had unquestioned right to convey and in respect to which her estate was not liable for tax. Also it preserved the right of the heirs to the remainder. But the circumstances and the agreement as a whole show plainly that the words of the agreement that the widow should be the owner conveyed no thought that she could spend the money or discount the securities or enter upon and use or waste the realty or mortgage, exchange or sell it. They meant merely that she should be deemed the owner for the single purpose of carrying the agreement of the parties into effect—it being part of the same agreement that she should not in fact have the ownership she had theretofore claimed. The quoted words did not relate to any actual enjoyment of the property such as gives rise to taxability upon its devolution by operation of descent laws and in the context and circumstances here they afford no justification to conclude that the trust instrument signed by the widow constituted a transfer by her of property of which she was then actually or in fact the owner.

It is clear that in order to determine for estate tax purposes the real and actual relationship in which the decedent Mary M. Reed stood towards the one-third of the Byron Reed estate at the time the compromise transaction was agreed upon and carried into effect by the parties interested, it is necessary to revert to the will of Byron Reed and the Nebraska law of descent as it was settled by the Supreme Court. By that will and that law the life estate in the one-third in question here went to the wid-ow and the remainder descended to the heirs. The widow derived no interest in respect to which her estate was taxable at her death, either directly or by reason of any transfer she might have made. That actual relation is controlling and compels determination against the tax assessed here. The fact that by a compromise settlement transaction, which was essentially one transaction, the third of the property was put in a trust and the trustees authorized to make a distribution different from that prescribed by the will and the Nebraska law could not on account of mere matters of form to be found in it create a liability of the widow's estate to tax.

The case is controlled by the principle announced by the Supreme Court in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410. In that case, as here, property of a decedent was distributed to a taxpayer according to a compromise agreement of the parties interested and contrary to a will. It was contended that by the law of the state in such a case the property was deemed to have been taken by the taxpayer by purchase and not by inheritance and that he was not exempt from federal income tax in respect to it. But the court, after declaring that the federal and not the state law controls in the uniform application of federal tax laws, found that the property received by the taxpayer was received by him as an heir and decided that it should be exempted from the tax. It looked through the compromise proceedings and agreement and the court decree enforcing them to the actual fact that "what he [the taxpayer] got from the estate came to him because he was heir."

So in this case it is equally clear that the two children of Byron Reed came into the remainder interest of the property involved here at their mother's death because they were Byron Reed's heirs and owners of that remainder according to Nebraska law. They did not take it as viewed from the federal taxing angle by transfer or purchase from her. The widow likewise got her dower right and the additions to it because of her standing as widow and the dower right and the additions to it went to her as the ultimate result of her widow's

standing, the agreement of all the parties and the placing of the property in the hands of the trustees on the agreed conditions. It distorts the realities of the situation and conflicts with the principle of the decision in the Lyeth case to conclude from the quoted words of the compromise agreement that she first became the owner of the property and then made a taxable transfer of it.

Although the brief of the government here is thorough and cites many cases involving the estate tax statute here involved, we find none presenting facts closely analogous. It may be rare that the compromise settlement of a single disputed question of law controlling the distribution of an estate has been so promptly followed by complete judicial determination of the disputed law question as in this case. But we think the well considered decision of the Tax Court in Estate of Mary Clare Milner, 6 T.C. 874, bears closely in its facts on the question for decision here.

In that case the grandmother, Gustrine Milner, who was possessed of property, executed her will in 1921 leaving one-half of her estate in trust for her daughter Mary Clare Milner, the decedent, whose estate was sought to be taxed. The decedent was to have a life income from the trust and the remainder was to go to her two daughters, the granddaughters of Gustrine. The grandmother executed another will in 1927 leaving one-half of her property outright to her daughter, the decedent. The grandmother died in 1929 and there was a will contest as to whether the 1921 will or the 1927 will was the valid will. The later was first offered for probate and was contested by the granddaughters who offered the original will. A compromise was reached on the basis that the later will should stand but that the daughter, decedent, would place her share in trust, receiving the income only for her life and the remainder to go to the granddaughters. The daughter, the decedent, died in 1940, and it was sought to include the corpus of that trust in her gross estate.

The court said:

"They [the taxpayer petitioners] also oppose taxation on the further ground that under the settlement of the will contest the property never passed to decedent but passed directly by devise or inheritance from the estate of Gustrine Key Milner to the trustees for the beneficiaries named in the trust, and that the decedent, consequently owning only a life estate in the property, was not the grantor of the property within the statute and no part of the property passed at or by reason of her death. They insist that the trust instrument was a mere means used to give effect to the settlement agreement and that whatever the decedent received was received by her coupled with and subject to the trust."
and the court held:

" * * * The proceedings in the probate court were, therefore, by consent, and the decree was not a decree entered upon a real controversy regularly submitted for determination. We, therefore, are not required to accept it as a conclusive determination that the decedent owned an undivided one-half interest in fee in the real estate of Gustrine Key Milner, as contended by the respondent.

"Upon the facts shown by the record, we think the decided cases require us to hold that the decedent did not become the owner of the property described in the trust instrument of April 13, 1929, as contended by the respondent, but that she acquired only a life estate in that property and, consequently she did not own any interest therein which passed at or by reason of her death.

" * * * Under the settlement, their mother, the decedent herein, acquired nothing more than the right to the net income from an undivided one-half interest in the real estate during her life, or, in other words, a mere life estate, and the remainder after such life estate was acquired by Gustrine Milner Jackson and Mary Clare Milner Morse (granddaughters) and their lineal descendants. If, as the foregoing cases hold, the latter two acquired such remainder interest from the estate of Gustrine Key Milner (grandmother) we see no reason for holding that, within the meaning of section 811(c), such remainder interest constituted 'any interest' in property

of the decedent, Mary Clare Milner (daughter), or any interest in property with respect to which she did or could make a transfer of the kind described in section 811(c) supra. * * *

"* * * In view of our conclusion that the decedent did not make a transfer of any interest in property within the meaning of section 811(c), it is unnecessary to consider the contentions of the respondent that the purported transfer of April 13, 1929, was made by the decedent in contemplation of death, or that it constituted a transfer to take effect in possession or enjoyment at or after her death."

The case, it is true, deals with section 811(c) rather than section 811(d), but this difference is immaterial because either section requires a transfer by the decedent.

█ It has appeared to us that the reasoning and conclusion of the Tax Court in the Milner case, supra, are sound and that upon application of the same controlling principle to the stipulated facts in this case it must be held that the trust fund in this case derived from one-third of the estate of Byron Reed enjoyed during her lifetime only by his widow Mary M. Reed, and then devolved as to the corpus upon his children, is not includable in the gross estate of the decedent Mary M. Reed.

We have considered the contentions for the government that the tax in question here should be sustained on other grounds and by reason of other provisions of the tax laws than the one upon which the decision of the Tax Court was rested, but we deem them to be without merit. We recognize fully that Mary M. Reed did come into and enjoyed during her lifetime such an interest in the property here involved that the Congress could and might well have imposed an estate tax in respect to it at her death. But it has not done so. It was not property of which she died seized and she did not become the owner and make a transfer of it within the statute. We are convinced that the decision and order of the Tax Court are erroneous and they are therefore reversed and the deficiency claimed is disallowed.

Reversed.