676 F.Supp. 928 (1988)
CENTERRE TRUST COMPANY OF ST. LOUIS, et al., Plaintiffs,
v.
The UNITED STATES of America, Defendant.
No. 86-2066C(6).
United States District Court, E.D. Missouri, E.D.
January 12, 1988.
Juan D. Keller, Kathleen R. Sherby, Peter E. Wendel, Bryan, Cave McPheeters & McRoberts, St. Louis, Mo., for plaintiffs.
Robert Metcalfe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Joseph Moore, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on cross-motions for summary judgment.
Plaintiffs Centerre Trust Co. of St. Louis and Edward C. Simmons III, co-executors of the Estate of Edward C. Simmons II, bring this action against defendant United States of America for a refund of federal estate taxes which they allege the Commissioner of Internal Revenue ("Commissioner") erroneously assessed against and collected from the Estate of Edward C. Simmons II ("decedent" and "decedent's estate"). The dispute centers upon the proper construction and application of Section 2036 of the Internal Revenue Code of 1986, 26 U.S.C. § 2036 ("Code"). Plaintiffs contend the Commissioner misapplied Section 2036 by including in decedent's federal gross estate one-third of the assets of two *929 trusts which were created either by the Last Will and Testament of Wallace D. Simmons, decedent's father, or by the settlement of a controversy concerning provisions of his will. Defendant, on the other hand, contends the decedent's interests in the two trusts were properly included in his federal gross estate as decedent, his mother and his sister created the trusts, voluntarily funded them with property from Wallace D. Simmons' estate, and retained life interests in them.
The facts giving rise to this action are not in dispute and may be summarized as follows. Wallace D. Simmons executed his Last Will and Testament ("Will") on July 14, 1928, and died on December 7, 1929. Shortly thereafter, his Will was admitted to probate in the Probate Court of the City of St. Louis. Insofar as it is pertinent here, his Will provides:
Section No. 2: I hereby give and bequeath whatever of my personal property may be in our residence at 46 Westmoreland Place to my wife, Jessamine B. Simmons, as her absolute property, or to be divided as she thinks best with other members of the family.
I hereby give and bequeath whatever of my personal property may be in my office, which is now at Room 854 Century Building, to my son, Edward C. Simmons, II., as his absolute property, or to be disposed of as he may think best.
Section No. 3: All the rest, residue and remainder of my estate of whatever it may consist, wherever situated and belonging to me at the date of my death, I hereby give and devise and bequeath to my wife, Jessamine B. Simmons, and my son, Edward C. Simmons, II., and the St. Louis Trust Company, a Missouri corporation, in trust nevertheless for the use and purposes and the terms and conditions that they may after consultation decide to be the best way of carrying out the following purposes:
It is my desire, and I direct that my estate be divided equally between my wife, Jessamine B. Simmons, and my daughter, Eleanor Simmons Koehler, and my son, Edward C. Simmons, II., share and share alike.
* * * * * *
It is my wish that the shares which I own in the Philadelphia National Bank and in the First National Bank in St. Louis and the St. Louis Union Trust Company be established as a Trust, the income from which shall go to my wife during her lifetime, or as much of it as she may care to retain, and at her death the income to be divided between our two children during the remainder of their lives and some suitable provision made for the proper distribution of either the income or the principal to their heirs at the time of their death. My thought is that if this be done, it will practically ensure them of a comfortable income so long as they may live and take care of them in spite of any misfortune that might happen through unfortunate investments of their other properties.
I suggest, instead of putting all of these bank stocks in one trust, that a separate trust be made for each one and that the Philadelphia Trust Co., which now acts for others as Trustee and votes a large percentage of the stock of Philadelphia National Bank be made Trustee of that stock; and in like manner, the St. Louis Union Trust Company be made Trustee of the First National Bank stock, with my son, Edward C. Simmons, II., as co-Trustee in each case.[1]
Soon after St. Louis Union Trust Co., the predecessor of Centerre Trust Co. of St. Louis, and the decedent Edward C. Simmons II were appointed co-executors of Wallace D. Simmons' estate, a question arose as to the proper construction of Section 3 of the Will. By letter dated January 18, 1930, Rhodes E. Cave, counsel for St. Louis Union Trust Co., advised his client of *930 his belief that Wallace D. Simmons had bequeathed to his wife, daughter and son, in equal shares, a fee simple interest in his residuary estate. However, he noted that the proper construction of the Will was "not free from doubt" and that a court might construe the reference to the stocks in the Philadelphia National Bank, the First National Bank in St. Louis and the St. Louis Union Trust Co. as creating a precatory trust. Although convinced that such was not the testator's intent, he recommended that his client refrain from assuming any responsibility under the Will and seek the court's instructions as to its proper construction. In another letter to the St. Louis Union Trust Co. dated March 18, 1930, Cave reiterated his belief that the testator had bequeathed to his family the residuary of his estate in fee but that the provisions regarding the bank stocks "might be construed to be sufficient to create a precatory trust." However, he suggested that a suit to construe the Will could be avoided if Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler voluntarily agreed to place the stocks in trust under the terms and conditions provided for in the Will.
In a letter dated April 1, 1930, Lewis S. Halsam, counsel for Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler advised his clients of St. Louis Union Trust Co.'s concerns. He alerted them to the possibility of a will construction suit, but noted that the suit could be avoided if they agreed to implement the terms of the trusts as suggested in the Will. He further indicated that such a resolution of the matter would be the "least expensive course" for all the parties.
On March 25, 1931, Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler entered into an Agreement in which they agreed to place the bank stocks mentioned in the Will in trust, with the major portion of the income going to Jessamine B. Simmons during her lifetime and the balance going to Edward C. Simmons II and Eleanor Simmons Koehler in equal shares. They further agreed to divide the remainder of Wallace D. Simmons' residuary estate equally and free of any trust between Edward C. Simmons II and Eleanor Simmons Koehler. Jessamine B. Simmons expressly waived any right she had to the residuary estate.
On March 25, 1931, the parties to the Agreement executed a Trust Agreement under which the stock in the First National Bank in St. Louis and the St. Louis Union Trust Co. were to be placed in trust. Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler were named as both the grantors and the co-trustees of the trust. In addition, the St. Louis Union Trust Co. was also named a co-trustee of the trust. On March 27, 1931, the parties again executed a Trust Agreement under which the stock in the Philadelphia National Bank was to be placed in trust. Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler were also named as both the grantors and co-trustees of the trust. However, the Fidelity-Philadelphia Trust Co. was named as an additional co-trustee.
The above-referenced trusts were funded on March 26, 1931 and April 8, 1931, respectively. Pursuant to the Petitions for Orders of Partial Distribution filed by the executors of the estate, the stocks were distributed to Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler as residuary legatees under the Will. Immediately thereafter the stocks were transferred to the respective co-trustees of each trust.
On December 3, 1935, the executors of the estate requested partial distribution of the residue of the estate to Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler. However, the probate judge refused to permit such a distribution and required any future distributions be made to Jessamine B. Simmons, Edward C. Simmons II and St. Louis Union Trust Co. as trustees. All subsequent distributions from the estate were made in that manner.
Edward C. Simmons II, the last surviving heir of Wallace D. Simons, died on April 7, 1979. On January 7, 1980, plaintiffs filed a federal estate tax return and reported for *931 informational purposes the existence of decedent's interests in the trusts created by the Trust Agreements of March 25, 1931 and March 27, 1931. Following an audit of the estate tax return, the Commissioner determined that decedent had received outright one-third of the bank stocks under the Will and had contributed his one-third interest to the trusts created on March 25, 1931 and March 27, 1931, retaining life interests therein. As a result, and pursuant to Section 2036 of the Code, the Commissioner included in the value of the life estates retained by decedent in the corpora of the trusts in his gross estate and assessed a deficiency in the federal estate tax in the amount of $37,365.81 plus $10,007.50 interest. After full payment of the deficiency, plaintiffs timely filed the instant action for a refund.
Before turning to a consideration of the merits of the parties' respective positions, the Court notes that, as in any refund suit, a presumption of correctness attaches to the Commissioner's assessment of a deficiency. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); Southwestern Life Insurance Company v. United States, 560 F.2d 627, 635 (5th Cir.), cert. denied, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); Laurel Hill Cemetery Association v. United States, 427 F.Supp. 679, 686 (E.D.Mo.), aff'd, 566 F.2d 630 (8th Cir.1977). The taxpayer bears the burden of proving the Commissioner's assessment was wrong as well as the amount of the refund, if any, which he is entitled to collect. United States v. Janis, 428 U.S. 433, 440-41, 96 S.Ct. 3021, 3025-26, 49 L.Ed.2d 1046 (1976); Drake v. United States, 355 F.Supp. 710, 712 (E.D.Mo.1973). Accordingly, and for plaintiffs to recover here, they must affirmatively demonstrate that the Commissioner's inclusion in decedent's federal gross estate of the value of the life interests decedent retained in the corpora of the two trusts was incorrect and that the Commissioner's assessment of a deficiency was erroneous.
As mentioned above, the resolution of this action depends upon the proper construction and application of Section 2036 of the Code. Section 2036 provides in pertinent part as follows:
(a) ... The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer ..., by trust or otherwise, under which he has retained for his life ...
(1) the possession or enjoyment of, or the right to income from, the property. ...
In construing Section 2036, both parties concede that the value of decedent's life interests in the corpora of the two trusts should only be excluded from his gross estate if one of two situations is present: (a) if the trusts were created under the Will of Wallace D. Simmons, or (b) if the trusts were created under a bona fide compromise of an actual controversy regarding provisions of the Will. In their motions for summary judgment, plaintiffs contend both situations are present while defendant contends neither is. For the following reasons, the Court finds that the trusts were not created under the Will of Wallace D. Simmons, but that they were created under a bona fide compromise of a controversy regarding provisions of the Will. Accordingly, and as there is no dispute as to any material fact, the Court finds that plaintiffs are entitled to judgment as a matter of law.

A. The Will of Wallace D. Simmons

Plaintiffs advance two theories under which decedent received his interest in the stock of the Philadelphia National Bank, the First National Bank in St. Louis and the St. Louis Union Trust Co. in trust. First, they contend that Wallace D. Simmons bequeathed the entire residue of his estate, including the bank stocks, to Jessamine B. Simmons, Edward C. Simmons II and St. Louis Union Trust Co. in a continuing trust upon the terms and conditions set forth in Section 3 of the Will. Second, they contend that Wallace D. Simmons' "wish" that the bank stocks be placed in trust imposed an imperative obligation on his legatees to place the stocks in trust and, as *932 such, created a precatory trust. Both theories are without merit.
As the parties concede, the Court must turn to Missouri law to determine the nature of the interests decedent received under the Will. See, e.g., Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940); Teller v. Kaufman, 426 F.2d 128, 131 (8th Cir.1970). Under Missouri law, a court charged with the responsibility of determining the effect of a will, including the effect of a testamentary trust, is guided by certain well-established, if not always helpful, rules of construction. As summarized in In re Estate of Just, 618 S.W.2d 208 (Mo.App.1981), the duty of a court is to ascertain and give effect to the testator's intent as gleaned from the instrument as a whole:
... [T]he court's purpose is to ascertain the intent of the testator and to give effect to such intent as long as it is not contrary to law. In re Estate of Welter, 598 S.W.2d 618, 619 (Mo.App.1980); Trantham v. Trice, 567 S.W.2d 389, 393 (Mo.App.1978); Cavers v. St. Louis Union Trust Co., 531 S.W.2d 526, 534 (Mo. App.1975). The testator's intent must be gleaned from the four corners of the instrument and all provisions must be given effect, if possible. In re Estate of Stengel, 557 S.W.2d 255, 259 (Mo.App. 1977). A court will enforce the intent of the testator, no matter where it is expressed in the will. Ussher v. Mercantile Trust Co., 328 S.W.2d 699, 703 (Mo. 1959). If provisions of the will are contradictory, those provisions must prevail which are apparently most congruent with the testator's wishes as gathered from the entire will. Fishman v. Keating, 542 S.W.2d 314, 317 (Mo.App.1976); Boxley v. Easter, 319 S.W.2d 628, 632 (Mo.1959).
618 S.W.2d at 211. Moreover, the language a testator employs in a will is to be given its ordinary or primary meaning unless the other language employed by the testator discloses that such meaning is repugnant to his intent as it appears from the will as a whole. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23 (1951). Only when the language is ambiguous or wanting in clarity may a court consider extrinsic evidence to ascertain the testator's intent. Matter of Morrissey, 684 S.W.2d 876, 878 (Mo.App.1984). Finally, and "[b]y reason of the infinite variety of expression employed in wills," it should be noted that "precedents are of less value in their construction than in many other fields of inquiry...." Housman, 244 S.W.2d at 23.
Turning now to plaintiffs' first contention it is apparent that Wallace D. Simmons did not intend to bequeath the residue of his estate to Jessamine B. Simmons, Edward C. Simmons II and St. Louis Union Trust Co. in a continuing trust. In support of their contention, plaintiffs highlight the introductory language of Section 3 of the Will which reads as follows:
... All of the rest, residue and remainder of my estate ... I hereby give and devise and bequeath to ... Jessamine B. Simmons ..., Edward C. Simmons, II., ... and St. Louis Union Trust Co. ... in trust nevertheless for the uses and purposes and the terms and conditions that they may after consultation decide to be the best way of carrying out the following purposes....
The "following purposes," as indicated in subsequent paragraphs of Section 3, include the disposition in equal shares of the residue of his estate between his wife, daughter and son, the disposition of his property in Oconomowoc, Wisconsin, and the disposition of his bank stocks.
As noted above, a court will interpret the language a testator employs in a will in accordance with its ordinary or primary meaning unless such meaning is repugnant to his intent as it appears from his will as a whole. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23 (1951). In the instant case, plaintiffs would have this Court interpret the testator's use of the term "in trust" as manifesting his intention to create a continuing trust. Although such an interpretation would comport with the ordinary or primary meaning of the term, it clearly would be inconsistent with the testator's intent as an examination of Section *933 3 indicates that the testator never did contemplate a continuing division between the legal and beneficial interests of his residuary estate. Rather, and as a review of the remaining paragraphs of Section 3 suggest, the term "in trust" can only be interpreted to manifest the testator's intent to create a trust for the limited purpose of disposing of his residuary estate. Once the trustees disposed of his residuary estate to the beneficiaries named in the Will, the trust would end. Such an interpretation, moreover, is consistent with the testator's outright bequest, immediately following the language in question, of his residuary estate to his wife, daughter and son.[2]
In further support of their interpretation, plaintiffs argue that both the Probate Court and the testator's family consistently acted as if the testator had bequeathed the residue of his estate in trust. Specifically, they note that the Probate Court, as indicated by the Orders of Partial Distribution filed with it on December 20, 1935 and April 4, 1936, required the remaining residue of the estate to be distributed to the named trustees before it was distributed to subsequent parties. In addition, they note that when the testator's family conveyed the Oconomowoc, Wisconsin, property, they did so by means of a trustee's deed signed by all of the named trustees. Assuming such extrinsic evidence is admissible, the Court notes that it is inconclusive at best. First, the action such documents manifest is not inconsistent with the Court's interpretation of "in trust" as creating a limited trust for the sole purpose of disposing of the testator's residuary estate. Second, it is not clear to the Court that the Probate Court and the testator's family did consistently act as if the testator had bequeathed the residue of his estate in trust. In the Orders of Partial Distribution filed with the Probate Court on March 26, 1931 and April 8, 1931, the Probate Court permitted portions of the residue of the testator's estate to be distributed to Jessamine B. Simmons, Edward C. Simmons II and Eleanor Simmons Koehler as residuary legatees under the Will. Moreover, as indicated by the letters of Rhodes E. Cave and Lewis S. Halsam, counsel for both St. Louis Union Trust Co. and the testator's family clearly expressed their belief that the testator had bequeathed to his wife, daughter and son, in equal shares, a fee simple interest in his residuary estate.
Turning to plaintiffs' second contention, it is likewise apparent that Wallace D. Simmons' "wish" that his stocks in the Philadelphia National Bank, the First National Bank in St. Louis, and the St. Louis Union Trust Co. be placed in trust is insufficient to create a precatory trust. In support of their contention, plaintiffs highlight the following language from Section 3 of the Will:
It is my wish that the shares which I own ... be established as a Trust, the income from which shall go to my wife during her lifetime, or as much of it as she may care to retain, and at her death the income to be divided between our two children during the remainder of their lives and some suitable provision made for the proper distribution of either the income or the principal to their heirs at the time of their death.
"My thought is if this be done," the testator adds by way of explanation, "it will practically ensure them of a comfortable income so long as they may live and take care of them in spite of any misfortune that might happen...."
Under Missouri law, a testator's use of precatory words, such as words of request, recommendation, suggestion or entreaty, may be sufficient to create a precatory trust so long as the words used, when viewed in the context of the will as a *934 whole, express the testator's will or intention, as distinguished from his wish or desire, that such a trust be created. Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939, 941 (1936). The use of precatory words in a given will may be sufficient to create a precatory trust whereas the same words in another will may not. Lemp v. Lemp, 264 Mo. 533, 175 S.W. 618, 620 (1915). Compare Thompson v. Smith, 300 S.W.2d 404 (Mo.1957) ("wish" held insufficient to create a precatory trust) with Murphy v. Carlin, 113 Mo. 112, 20 S.W. 786 (1892) ("wish and desire" held sufficient to create a precatory trust). The result depends on whether the words used acquire, by virtue of the other language used in the will, the sense of an imperative or command. As the court in Blumer observed, the "question depends entirely upon the sense in which [the testator] used the words, and that must be determined from a consideration of the will as a whole, and not from the abstract definition of such words, divorced from other provisions of the will." 93 S.W.2d at 941. In sum, every case turns upon the construction of the particular will under consideration and, as is the case in any suit to construe a will, the testator's intent, insofar as it may be gleaned from the four corners of his will, controls.
Wallace D. Simmons' use of the word "wish," when read in conjunction with his entire Will, indicates that he did not intend to impose on his legatees the obligation to carry his wish into effect by placing the bank stocks in trust, but rather that he intended to leave it within their discretion to do so or not as they saw fit. Significantly, he knew how to use language of a mandatory or imperative nature when he so desired. In Section 2 of his Will, he "give[s] and bequeath[s]" his personal effects to his wife and son as their "absolute property." In Section 3, he "desire[s], and [he] direct[s] that [his] estate be divided equally between [his] wife, ... [his] daughter ... and [his] son ..., share and share alike." Such language is altogether absent here. In addition, and with respect to the provision in question, he felt compelled to explain his "wish" by observing that "if this be done" his wife and children could enjoy a comfortable life free from economic hardship. Moreover, by using the phrase "if this be done" he evidently realized that a different disposition of the bank stocks might be made. His use of the word "wish," then, reflects his wish or desire, not his will or intention, and thus cannot be construed to create a precatory trust.
In reaching its result, the Court finds further support in a well-established rule of construction which provides that if a devise or bequest gives fee simple title then that title cannot be cut down by a subsequent provision unless the later provision is as clear and definite as the language of the clause which gives fee simple title. See Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 24 (1951); Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939, 940-41 (1936); Estill v. Ballew, 26 S.W.2d 778, 779 (Mo. 1930). The Court has construed the second paragraph of Section 3 of the Will, in which the testator declares that "[i]t is my desire, and I direct that my estate be divided equally between my wife, ... my daughter ... and my son," as vesting in his wife and two children fee simple title in his residuary estate. In a subsequent paragraph of Section 3, the testator expresses his "wish" that the bank stocks, which constitute a portion of his residuary estate, be impressed in a trust. Quite clearly, such a "wish" is neither as clear nor as definite as the bequest in fee and thus cannot be construed to mandate the creation of a trust and thereby cut down the prior grant in fee.
Accordingly, the Court finds that the creation of the two trusts containing the bank stocks was not mandated by the Will.

B. The Compromise

Alternatively, plaintiffs contend that the decedent acquired his interest in the trusts containing the bank stocks under a bona fide compromise of an actual dispute regarding provisions of the Will. As such, the decedent effectively acquired his interest under the Will and did not transfer it within the meaning of Section 2036 of the Code. Accordingly, they argue that the Commissioner erroneously included the value *935 of his interest in the trusts in his gross estate. Although defendant essentially concurs in plaintiffs' interpretation of the law, it disputes their interpretation of the facts. Under defendant's version of the facts, neither the executors nor the legatees of the Will entered into a dispute as to its meaning and the so-called compromise merely effectuated a voluntary rearrangement of property interests acquired under the Will. Thus, it argues that the decedent did transfer his interest in the bank stocks in trust and the Commissioner properly included his interest in the trusts in his gross estate. Upon a review of the record, the Court finds defendant's argument to be without merit.
As the parties are in essential agreement as to the law, an extensive discussion of the applicable case law is unnecessary. In fashioning their respective arguments, they both rely on Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938), and its progeny. Insofar as it is pertinent here, the Supreme Court in Lyeth established the doctrine whereby proceeds received in compromise of a dispute are characterized for tax purposes in accordance with the nature of the claims which were compromised. Subsequent case law further clarified the parameters of the doctrine. The compromise must be a bona fide compromise of an actual dispute. Although the compromise need not be based on a dispute which is the subject of litigation, it must be based on "something more than a naked threat." Bailey v. Ratterre, 144 F.Supp. 449, 453 (N.D.N.Y.), aff'd, 243 F.2d 454 (2nd Cir. 1957). "Some evidence beyond the mere retention of an attorney and some recognition of the existence and disposal of the threat to an estate must be shown." Id. Moreover, whether a dispute is sufficient to constitute an actual dispute depends upon the good faith belief of the parties, and not upon its underlying merits. Howard v. Commissioner of Internal Revenue, 447 F.2d 152, 157 (5th Cir.1971).
In their argument, plaintiffs contend Reed's Estate v. Commissioner of Internal Revenue, 171 F.2d 685 (8th Cir.1948), is closely analogous to the instant case and controls its outcome. In Reed, the decedent received under her husband's will a life-interest in one-third of his estate. Pursuant to a state statute, however, she elected to receive one-third of her husband's estate outright. Her children subsequently challenged her right to do so. In an effort to avoid litigation, they entered into a compromise under which she agreed to receive a portion of her elective share outright and to place the balance of that share in trust with the income to go to her for life and the remainder to go to her children. The assets which were to comprise the trust were then transferred to her and immediately thereafter placed in trust. The Commissioner included the corpus of the trust in her gross estate as he found that the compromise resulted in a taxable transfer. The court disagreed. In so doing, it relied on the doctrine first enunciated in Lyeth:
It distorts the realities of the situation and conflicts with the principle of the decision in the Lyeth case to conclude from the ... compromise agreement that she first became the owner of the property and then made a taxable transfer of it.
171 F.2d at 690. Elsewhere in the opinion the court noted that the dispute between the decedent and her children was at once "clearly defined" and "real and substantial" even though it had not been submitted to final judicial determination. 171 F.2d at 686.
Defendant attempts to distinguish Reed by relying on the salient factual pattern found in Commissioner of Internal Revenue v. Vease's Estate, 314 F.2d 79 (9th Cir.1963). In Vease, the testator executed his will and then, immediately before his death, drafted an unexecuted will. After consultation with their attorney, the testator's heirs voluntarily agreed to abide by the terms of the unexecuted will and, in accordance with these terms, placed certain assets from the testator's estate into various trusts. In holding that the Commissioner properly included the corpora of these trusts in decedent's gross estate, the court reasoned:
The resulting agreement was nothing more than a voluntary rearrangement of property interests acquired under an admittedly *936 valid will, concluded without duress of unsatisfied claims. Under these circumstances the transfer to the trusts must be deemed to have been made from property each had received from the estate.
314 F.2d at 87. In essence, the court found that the agreement was not a bona fide compromise of an actual dispute.
Upon review of the correspondence exchanged between the respective counsel for St. Louis Union Trust Co. and the legatees under the Will, the Agreement of March 25, 1931 and the resulting Trust Agreements of March 25, 1931 and March 27, 1931, the Court finds this action virtually indistinguishable from Reed and accordingly concludes that the Agreement constituted a bona fide compromise of an actual dispute. There can be not doubt but that as soon as the Will was admitted to probate a question arose as to whether the reference to the bank stocks in Section 3 of the Will was sufficient to create a precatory trust. In an apparent attempt to avoid liability as an executor under the Will, counsel for St. Louis Union Trust Co. advised it to refrain from assuming any responsibility under the Will until it received court instructions as to its proper construction. In response, and at the suggestion of the trust company's counsel, counsel for the legatees advised the legatees that a costly will construction suit could be avoided if they voluntarily entered into an agreement whereby the trusts proposed in the Will would be created. It follows that such a will construction suit could have entailed substantial expense and could have prevented the executors from distributing the assets of the estate for a lengthy period of time. Faced with such a choice, the legatees understandably chose to enter into the Agreement of March 25, 1931. As in Reed, then, the dispute was neither a naked threat nor a stratagem to avoid taxes, but was, rather, a "real and substantial" one. Finally, the court notes that, pursuant to the Orders of Partial Distribution dated March 26, 1931 and April 8, 1931, the bank stocks, although distributed directly to the legatees as part of their share of the residuary estate, were never in their control as arrangements had been made whereby the bank stocks would be simultaneously transferred into the trusts.
Defendants reliance on Vease is misplaced. As in Vease, defendant contends that there was no actual dispute between the executors and the legatees and that the compromise reached merely effectuated "a voluntary rearrangement of property interests." First, the existence of an actual dispute is dependent upon the good faith belief of the parties, and not upon its underlying merits. Howard, 447 F.2d at 157. Although counsel for the parties expressed their doubts as to whether the reference to the bank stocks was sufficient to create a precatory trust and this Court has concluded that it was not, they clearly believed that a court might construe the Will so as to mandate the creation of such a trust. The parties were entitled to rely on their respective counsel's advice. Thus the Court has no hesitation in concluding that the parties believed in good faith of the existence of the dispute.
Second, the compromise represented an obvious attempt to resolve the dispute and to obviate the need for a costly will construction suit. Defendant notes that under the Agreement of March 25, 1931, Jessamine B. Simmons accepted a 70% life interest in the corpora of the trusts, rather than the full life interest she could have accepted under the Will, and waived any right she had to the remaining assets of the residuary estate. To therefore argue that the Agreement merely effectuated a voluntary rearrangement of property interests acquired under the Will distorts the realities of the situation. Unless the compromise was reached, the St. Louis Union Trust Co., on the advice of counsel, would no doubt have refrained from distributing any assets from the residuary estate. The compromise was an attempt to avoid just such a result.
In sum, the Court concludes that plaintiffs have met their burden of demonstrating that the Commissioner misapplied Section 2036 of the Code when he included decedent's interest in the corpora of the two trusts in his gross estate. Accordingly, *937 it finds that plaintiffs are entitled to a refund of the full amount of the deficiency which the Commissioner assessed against decedent's estate.

ORDER AND JUDGMENT
Pursuant to the memorandum filed herein on this date,
IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment be and it is granted.
IT IS FURTHER ORDERED that defendant's motion for summary judgment be and it is denied.
In light of these holdings,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment in this action be and it is entered in favor of plaintiffs and against defendant in the amount of $47,373.31.
NOTES
[1] In those portions of Section 3 of the Will not reproduced here, the testator bequeaths his property in Oconomowoc, Wisconsin, designates St. Louis Union Trust Company, his son, Edward C. Simmons II, and, in the event his son predeceases him, his wife, Jessamine B. Simmons, co-executors of the Will, explains inconsistencies with a former will, and provides advice to his family on how best to invest the remaining proceeds from his estate.
[2] Although the Court need not decide the issue, it appears that in using the term "in trust" the testator confused the functions of an executor with those of a trustee. In this regard, it is interesting to note that the testator bequeathed his residuary estate to Jessamine B. Simmons, Edward C. Simmons II and St. Louis Union Trust Co. "in trust." In a succeeding paragraph he named St. Louis Union Trust Co., Edward C. Simmons II and, in the event Edward C. Simmons II predeceased him, Jessamine B. Simmons, co-executors of his Will. As plaintiffs point out, there is not an exact identity between the executors and the trustees but the similarity of identity is nevertheless striking, and suggestive.