Robert L. PHINNEY, District Director of Internal Revenue, Appellant,

v.

Milton KAY and Bernard Kay, as Executors of the Estate of Sarah Kay Rosenman, Appellees.

No. 17964.

United States Court of Appeals Fifth Circuit.

March 10, 1960.

Rehearing Denied April 8, 1960.

Jerome Fink, Atty. Dept. of Justice, Washington, D. C., K. Key Hoffman, Asst. U. S. Atty., Russell B. Wine, U. S. Atty., San Antonio, Tex., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Howard A. Heffron, Acting Asst. Atty. Gen., Harry Baum, L. W. Post, Attys., Dept. of Justice, Washington, D. C., for appellant.

C. W. Wellen, Charles W. Hall, Fulbright, Crooker, Freeman, Bates & Jaworski, William M. Ryan, Houston, Tex., for appellees.

Before RIVES, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

This case involves the question of the extent to which the estate of Mrs. Sarah Kay Rosenman is subject to liability for estate taxes. Appellees are the sons of Mrs. Rosenman by her first marriage. They brought this suit as executors of her estate seeking refund of estate taxes paid. For convenience Mrs. Rosenman will herein be referred to as Mrs. Kay. All events here pertinent occurred in Texas.

In 1943 Mrs. Kay and her husband, Max T. Kay, executed a joint and mutual will. It was made pursuant to an agreement between them regarding the testamentary disposition of their property. After formal recitations the will provided:

> "It is our will and desire that the survivor of us, Max T. Kay and Sarah Kay, as the case may be, shall, with the rights and authority below given, have all of the estate of every description real, personal and mixed, which either or both of us may own, to be used, occupied, enjoyed, conveyed and expended by, and during the life of such survivor as such survivor shall desire and that upon the death of such survivor any of such estate then remaining shall be divided among the persons following in the following manner:"

Then followed four specific monetary bequests and, subject to those bequests, the estate remaining on the death of the survivor was to be divided one-half to each of the two sons, Bernard and Milton. The quoted portion of the will seems to have been adapted from 3 Stayton, Annotated Texas Forms 983, § 4461. The form there set out was taken, with modification, from Verhalen v. Klein, Tex.Civ. App., 268 S.W. 975.

In 1948 Mr. Kay died. At that time all of the assets owned by him and Mrs. Kay were community property. Mrs. Kay probated the will and qualified as executrix.

In 1952 Mrs. Kay died and the joint and mutual will was probated as her will. The two sons qualified as executors. In 1953 the executors filed a federal estate tax return including therein property representing Mrs. Kay's one-half of the former community. The Commissioner of Internal Revenue held that the whole of the former community should be included, asserting that Mrs. Kay had a taxable power of appointment over the whole. The executors paid the tax on the whole and filed claim for a refund of the entire tax paid. This claim was rejected whereupon the executors brought suit in the district court seeking a refund. Trial was to the court without a jury. The only testimony was given, over objection,[1] by the Kay sons who testified as to conversations with their parents before and after the will was drawn. The substance of this testimony was that the elder Kays indicated "that it had always been their intention and was then to build an estate for (the Kay sons), that their efforts were in that direction, and that that estate would be held intact for (the sons)."

The district court ruled that the taxpayers were entitled to recover the entire estate tax paid. The conclusions of law upon which this decision was based are, in pertinent part, as follows:

> "2. The Kay Will is joint, mutual and reciprocal.

> "3. Mrs. Kay elected to take under the Will, and thereby obtained a life estate in all of the community property in exchange for her fee interest in one-half of the community property.

> "4. The Kay Will created a life estate in Mrs. Kay in all of the community property owned by Mr. and Mrs. Kay at the time of Mr. Kay's death.

> "5. Under the Will, Mrs. Kay had only the power to consume, in-

---

1. Based, inter alia, on the Texas Dead Man Statute, art. 3716, Tex.Rev.Civ.Stat.Ann.

vade or appropriate the estate property to the extent necessary. for her health, support and/or maintenance in accordance with her accustomed standard of living.

"6. Under either the conclusion that the Will was ambiguous and that effect must be given to the intent of the testators, or the conclusion that the Will is not ambiguous and speaks for itself, Mrs. Kay did not possess under the Will a Taxable general power of Appointment within the meaning of Section 811(f), 1939 Code." [2]

2. Section 811(f) reads, in part, as follows: "§ 811. Gross Estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \*

"(f) *Powers of Appointment.—*
\* \* \* \* \*

"(2) *Powers created after October 21, 1942.—*

"To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsection (c) or (d). A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power.

"For the purpose of this paragraph (2) the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

"(3) *Definition of general power of appointment.* For the purposes of this subsection the term 'general power of appointment' means a power which is exercisable in favor of the decedent, his credi-

Mutual wills, whether joint or reciprocal, have provided a fertile field for litigation in Texas, as elsewhere. See Brookes, The Tax Consequences of Widow's Elections in Community Property States, 1951 So. Calif. Tax Inst. 83; Young, The Doctrinal Relationships of Concerted Wills and Contract, 29 Texas L.Rev. 439 (1951); Note, 34 Texas L. Rev. 1104 (1956). Wills containing language in varying degrees similar to that quoted above have come before the Texas courts and this Court numerous times. From these cases it would be possible to cite doctrine or dictum to support almost

tors, or the creditors of his estate, except that—

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment." 26 U.S. C.A. § 811(f).

Treasury Regulation 105, § 81.24, further defines a power of appointment as follows:

"(2) *Power of appointment.—*The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a transfer in trust provides that the beneficiary may appropriate or consume the principal of the trust, such power to consume or appropriate is a power of appointment. Similarly, a power given to a donee to alter, amend, revoke, or terminate a trust is a power of appointment. \* \* \*

"(3) General Power of Appointment.—
\* \* \* \* \*

"A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent, shall not be deemed a general power of appointment. Whether a power is limited by an ascertainable standard will be determined by applying the principles followed in ascertaining the extent to which, if any, a bequest to a trust for both private and charitable purposes is allowable as a deduction under section 812(d). A power to consume, invade, or appropriate property for comfort, pleasure, desire, or happiness, is not a power limited by an ascertainable standard."

any position one might wish to take relative to the construction of such a will. But, from an examination of all these cases, it appears that the cases most closely in point require that we hold, contrary to the ruling of the district court, that, whatever property passed under the will,[3] Mrs. Kay was given a power of inter vivos disposition over that property, amounting to a taxable general power of appointment. Needless to say her power over property not passing to her under the will but, under Texas decisions,[4] bound by the terms of the agreement underlying the will, was no less extensive than her power over property passing to her under the will.

 It is well settled that once a joint and mutual will is executed and one of the parties thereto has died, the survivor becomes bound as to the testamentary disposition of property owned by either party at the decedent's death, barring a failure of the will to cover the total of such property. Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621. It is not clear whether the theory which requires this binding of the survivor and prevents effective revocation of the mutual will is estoppel, or contract, or election. "In any event, a court of equity will afford relief to one who seeks enforcement of the terms of a mutual will, after the death of one of the parties thereto * * *." Weidner v. Crowther, supra, 301 S.W.2d 621, 625. This also appears to be the holding in Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, wherein language quite similar to that used in the present will was construed.[5] The dispute in Murphy v. Slaton was over the effect of codicils to the mutual will

executed by the surviving wife after her husband's death. The question of what inter vivos dispositive power Mrs. Murphy may have had was not directly in issue but the court made statements concerning this power. It variously stated:

"Annie E. Murphy held a life estate in all of the property, with power to sell that portion of the property not specifically bequeathed to named beneficiaries, and she was estopped to change the distribution of the property as set forth in the will * * *. Harrell v. Hickman, [147 Tex. 396, 215 S.W.2d 876] * * *.

* * * * * *

"The right to 'convey' as given by the 1928 will would be meaningless without the right to sell the property. The right to 'use, enjoy, or occupy' as stated in the 1928 will is the right to consume the whole of the personal estate, not specifically devised, if necessary for the support, maintenance and benefit of the survivor." 273 S.W.2d 588, 595, 596.

This is the case relied upon most strongly by the taxpayers to support their contention that Mrs. Kay did not have a taxable general power of appointment. But aside from the fact that the taxpayer's reliance must be on dictum, it is clear that the pertinent dictum does not offer them true comfort. In the first passage quoted above the court cited Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, 877, for the proposition that Mrs. Murphy could sell that portion of the property not specifically bequeathed to named beneficiaries. In the Harrell case the court had before it a joint and mu-

3. Paragraphs 3 and 4 of the district court's conclusions of law reflect, to some extent, the confusion in the Texas cases as to what property passes under the will and by what means. The intricate problems posed by the cases dealing with contract and election and the like are not before us, being foreclosed by our decision as to the inter vivos dispositive power given Mrs. Kay by the terms of the will. See generally, 44 Texas Juris. 668, Wills §§ 124-25; Annotations, 108 A.L.R. 867, 169 A.L.R. 9.

4. E. g., Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621; Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588.

5. The following excerpt serves to illustrate the material differences between the two wills. The survivor was to have the property "to be used, enjoyed, occupied and conveyed by such survivor for and during his or her life time * * *." 273 S.W.2d 588, 590.

80

tual will giving the survivor "sole use and benefit" of the property of both, with the remainder specifically bequeathed to various relatives and charities. The surviving husband had conveyed part of the property to his second wife, retaining a life estate in said property. Remaindermen to whom this property would have passed under the will brought suit to recover the land. The Texas Supreme Court affirmed a dismissal of this suit stating:

> "The consequences of a holding that after the death of T. M. Harrell the remaindermen could be heard to come into court and inquire into the purposes of deeds made by him during his lifetime are not difficult to perceive. Each conveyance had the effect of reducing the estate which would otherwise have gone to the remaindermen, and it might be that a jury would find that, since it had that effect, it was executed for that purpose and was therefore a fraudulent conveyance. Titles to property should not rest on such uncertain bases. The point need not be labored, for it has been definitely decided by this Court that under wills of similar effect as that before us, where the survivor takes a conditional fee, or even a life estate, with full power of disposition, he may dispose of the property as he sees fit during his lifetime. Hanna v. Ladewig, 73 Tex. 37, 11 S.W. 133; Young v. Campbell, Tex.Civ. App., 175 S.W. 1100, writ refused; Johnson v. Kirby, Tex.Civ.App., 193 S.W. 1074, writ refused; Feegles v. Slaughter, Tex.Civ.App., 182 S.W. 10, writ refused; Kilpatrick v. Cassel, Tex.Civ.App., 19 S.W.2d 805." 215 S.W.2d at page 879.

The court continues in language which we think controls the present case:

> "In the instant case the testators in language free of ambiguity have clothed the survivor with the unqualified right to convey the property during his or her lifetime and have limited the rights of the remaindermen to whatever estate remained in the survivor at his or her death, and we are not authorized to impose a limitation upon that right or by implication to grant any right to the remaindermen other than to acquire that which might remain after the death of the survivor."

The testamentary provisions construed by the courts in the cases cited in Harrell v. Hickman are quite similar to those before us, especially in Johnson v. Kirby, supra,[6] and Kilpatrick v. Cassel, supra [19 S.W.2d 806].[7]

It appears, then, that the unambiguous words of the Kay will are to be construed as giving the survivor, Mrs. Kay, unlimited and unquestioned power to dispose of the property. One Texas court apparently had the exact words of the Kay will before it and was asked to determine if the remaindermen were necessary parties to an action for partition of the estate. Tillman v. Mahaffey, Tex. Civ.App., 252 S.W.2d 255. There it was stated:

> "In the Mahaffey will, the survivor, in this case the appellee, was given the unqualified right to use, occupy, enjoy, convey and expend all of the testator's property as she saw fit. The two daughters were not given any present interest in any of their father's estate. They were not vested with any right to interfere with their mother in the exercise of the title given her, nor were they given any vested right, title or interest in the proceeds of any sale she might make. She was not required to preserve, protect, nor ac-

---

6. "* * * to have and to hold the same and every part thereof to and for her sole and exclusive use and benefit, with full power to sell and convey, and dispose of the same, or any part thereof, as she may desire * * *."

7. "* * * to have as his own, to use and enjoy, and to sell and dispose of, as he may think proper and best * * *."

count for any of the property to the daughters. These are not incidents of a life estate, which presupposes a vested title in a reversioner other than the life tenant. As said in Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, 879. 'In the instant case the testators in language free of ambiguity have clothed the survivor with the unqualified right to convey the property during his or her lifetime and have limited the rights of the remaindermen to whatever estate remained in the survivor at his or her death, and we are not authorized to impose a limitation upon that right or by implication to grant any right to the remaindermen other than to acquire that which might remain after the death of the survivor.'

"Our conclusion is that the will in question devised a limitation or defeasible fee simple title to appellee. For additional authorities see McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 * * *. It follows that the trial court correctly held that there was no defect of necessary parties in the partition proceedings." 252 S.W.2d 255, 261.

■ The language of the will is unambiguous. The position of the Texas courts is clear. Prior to her death, Mrs. Kay had a general power of appointment over the estate here in issue, which power was not limited by an ascertainable standard relating to Mrs. Kay's health, education, support, or maintenance. The entire estate is therefore subject to tax under § 811(f), Internal Revenue Code of 1939. It follows that the judgment of the district court must be reversed. It appears that the taxpayers have made claim for an additional deduction based upon attorney's fees and expenses incurred in prosecuting this action. Since the district court awarded taxpayers judgment for the entire estate tax paid, it did not need to pass upon the claim for the additional deduction. This case must therefore be remanded for a determination of the amount of the claimed deduction.

Reversed and remanded.