Agnes Bell WADE, joined pro forma by her husband, Elmer C. Wade, Appellants,

v.

Nellye Bell SHERROD and The State National Bank of El Paso, Appellees.

No. 5406.

Court of Civil Appeals of Texas.

El Paso.

Dec. 14, 1960.

Rehearing Denied Jan. 11, 1961.

Guinn & Guinn, A. L. Carlton, El Paso, Coleman Gay, Austin, for appellants.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellees.

FRASER, Justice.

This is a will contest which, by the nature of the facts, presents both parties as a type of contestant. For that reason, we will refer to the parties simply as "appellants" and "appellees."

On June 26, 1948, Mrs. Nellye Bell Coles made and executed her will, hereinafter referred to as the "original" will. There has been no attack on the regularity and legality of this will, so it can be taken for granted that the will of 1948 was a good and effective will at the time it was made. Mrs. Coles died December 8, 1956, and this will was admitted to probate. It will not be necessary to reproduce the contents, or attach a copy of this will, other than to state that there were several bequests to individuals and charitable and religious organizations; after which the balance of this considerable estate passes in trust for the benefit of Mrs. Coles' cousin, Etta Sherrod, and her daughter, Nellye Bell Sherrod.

In May of 1958, appellant Agnes Bell Wade, niece of testatrix, filed her application for the probate of a purported holographic will of testatrix, dated July 6, 1951; and appellant further offered another purported holographic writing, dated July 10, 1951, contending that these two instruments constituted the last will of the testatrix. In these two instruments, appellant Agnes Bell Wade is named the sole beneficiary and independent executrix. They are here included for reasons which will appear later:

18

"dated by me to-day          July 6, 1951
Nellye Bell Coles          Witness—Agnes E. Bell
                              Upham Hotel—1404 De La Vina
                                        Santa
                                        Barbara
                                        Calif.

"I, Nellye Bell Coles, declare this is my last true will and testament thereby annuling and voiding any and all other wills here to for by me ever made.

I am in perfect health and I am perfectly sane.

It is true for many years I have 'hated' my niece, Agnes Bell, with no real reason but my own 'selfish greed,' for wealth social position and my own security in life that only large amounts of money can ever give to the material beings.

I have been cruel and very ruthless to her, as I was afraid of her finding out about all the dishonest things I have done to her and many others in my lifetime.

"Witness—Agnes Eliz. Bell—Upham Hotel—1404 De La Vina at Santa Barbara, Calif.

"2

"My late husband, Mr. A. P. Coles and I were responsible for stealing all of her father's estates from her.

I forged my dear mother's last will and then I paid people to say they had been witnesses to her writting out this same will. She was going to leave most of her estate to little Agnes; she is my only brother's only child, Frank Merrill Bell.

Mr. Coles' bank, the First National of El Paso, about this time was in trouble, and he needed a lot of money to help him then, so I forged my mother's last will to just help my dear husband in his business.

Now after a lifetime of crimes cheatings, lyings, and dishonesties against people, most of all are dead now, thank God, their sufferings are at least over for them. I find myself, now

"dated to-day by me      Nellye Bell Coles      July 6, 1951

only Nellye Bell Coles

God is my only witness to this to this will

Nellye Bell Coles only

please, let God be my witness to this this last will of mine now

"3

God is my only witness—Nellye Bell Coles to this my last true will.

"living in my comforts, wealth, ill gotten, all alone, old and afraid to die. afraid to die with my guilty conscience.

This will is my final and last will forever—May God forgive me all my sins, all my errors committed while here on earth. It is my final decision that all of my estates, monies,. personal properties, every thing that I die possessed of shall only go to my dear little niece, Agnes Elizabeth Bell (this is her maiden name, I do not know her married one or if she is even married now or not) to have and to hold as just her very own forever. Most of these things should have been hers many years ago. No one else must have any of my things. No one. (My just bills must be paid out of this estate of course) but after these are paid by her, only little Agnes

"Witnessed by Agnes Elizabeth Bell—Upham Hotel—1404 De La Vina, Santa Barbara, Calif.

"dated today by me   July 6, 1951   Nellye Bell Coles

"must have anything of mine. ever. This will be the only way I will ever 'finally rest in perfect peace of mind.' No one must ever contest this will. No court action ever be taken other than to file and probate this will. I do pray now that little Agnes will finally find it in her heart to 'forgive me', and will hold only a pure, kind thought for me, her aunt. She is to be sole administratrix and executrix and no bond be required of her. My Mexican houseboy known as 'Jenessamo' has advised me for several years, for my own good and to ease my guilty conscience to write this will this way—he will be pleased to find out I at last have done, as he felt the only right thing for my niece—little Agnes—he met and knew her too—he knows all of my dishonesties against her—May God forgive me. This will was written solely by me in my own hand. is my very last and authentic will—forever—right will
now prevail
at my
passing

"God is my            Nellye Bell Coles
only witness
to this will.            at 800 Magoffin Ave—
El Paso, Texas."

"Tuesday, July 10, 1951

"I went to my lawyer after my recent heart attack here in Santa Barbara, Calif. and now make this my last true will and testament. All of my properties of which I may die possessed of—real personal and mixed I leave to my niece, Agnes Bell of 2910 Budlong Ave Los Angeles Calif. I appoint her to be sole executrix and trustee of this, my last true will and request no bond be required of her. It is my will no action be had in the county or probate court in the

Nellye Bell Coles   Witness to-day Agnes E. Bell   Upham Hotel

God is my only witness—Nellye Bell Coles to this my last true will.

administration of my estate, other than to prove and record this will.

"2

"I am in good health now and sound mind, as my lawyer and friend who is with me here on this trip hammy Williams and my dear practicioner Viola Dearman will testify to as truth all my debts and funeral expenses must be paid out of my estate as soon after my death as can be done. I have helped Cousin Etta and Nellye Bell Sherrod, Honecimo Calderone my houseboy all of my life, so they need nothing of my estates—Nellye Bell teaches school now and makes a good living. This is in my own hand to-day July 10, 1951.

Nellye Bell Coles."

———◆———

Then, following the above described application by appellant, the State National Bank of El Paso, as executor of the 1948 will, and Nellye Bell Sherrod, as principal beneficiary thereof, filed their contest to the attempted probate of the purported holographic instruments, and then tendered for probate a codicil and testamentary instrument of testatrix, which was dated July 31, 1951. This codicil is included herein for purposes of reference and comparison:

"The State of Texas  
County of El Paso  
"This Codicil To My Last Will And Testament, executed this 31st day of July, 1951, as follows:

"The attached photostatic copy of what purports to be my holographic last will and testament, and which is undated, was received the 30th day of July, 1951, by attorney, J. F. Hulse, of El Paso, Texas. The Deputy District Attorney at Santa Barbara, California, told me that this photostatic copy is in the possession of R. B. Romero, Chief Deputy Sheriff at Santa Barbara, and Mr. Romero, at my request, mailed it to Mr. Hulse.

"The paper, of which this photostat is a copy, is not in my handwriting. It purports to be in my handwriting, and purports to bear my signature, and, therefore, is a forgery.

"I hereby declare that I have never written any holographic will. If any court should ever hold or adjudge that the writing of which the attached is a copy is my last will and testament, then I do hereby revoke any and every writing purporting to be a holographic will of mine, and which purports to be in existence at this time, including the one of which the attached photostat is a copy.

"I expressly declare that it is my will no part of my estate go to, vest in, or be paid over to my niece Agnes Bell.

"I further declare that my last will and testament is the last will and testament prepared for me, at my request, by J. F. Hulse of El Paso, Texas, and executed by me on June 26, 1948, in the presence of J. L. Rasberry and Gladys Horton as attesting witnesses. This will has never been revoked by me, and I hereby reaffirm it as being in full force and effect.

"I execute this as a codicil to my said will dated June 26, 1948, in order that this instrument may be admitted to probate for the purpose of defeating any attempt to forge a will for me, and in order that my said will dated June 26, 1948, be assured of being admitted to probate.

"In Testimony Whereof, I have executed this instrument at El Paso, Texas, on this the 31st day of July,

1951, in the presence of J. F. Hulse and Gladys Horton, who, at my request, and in my presence, and in the presence of each other, have signed their names hereto as attesting witnesses.

"Nellye Bell Coles (signed)
"Testatrix

"The foregoing instrument, consisting of two pages including this page, was signed by the Testatrix Nellye Bell Coles, and she declared the same to be a Codicil to her last will and testament, and we, at her request, and in her presence, and in the presence of each other, sign the same as attesting witnesses, this 31st day of July, 1951.

"Gladys Horton (signed)
"J. F. Hulse       (signed)"

It will be noted in the above codicil that testatrix flatly denies ever having made an holographic will, and expressly provides that no part of her estate shall go to her niece, appellant Agnes Bell Wade, and then states that the 1948 will is her real will and the one that she wants to be effective.

Judgment was entered in County Court denying probate of the holographic instruments, and admitting to probate the codicil dated July 31, 1951. This judgment was appealed and tried de novo before a jury in the 34th District Court of El Paso County, Texas. The jury found that the instrument of July 6th was not written by Mrs. Coles, but that the July 10th instrument was written by her; and, further, that the codicil was signed by Mrs. Coles and accordingly witnessed. The trial court entered its judgment ordering and decreeing that the two purported holographic instruments be denied probate, and ordering and decreeing that the codicil be admitted to probate as testatrix's last testamentary instrument, and that the same constituted a codicil to the 1948 will, and reaffirmed and republished and re-executed the 1948 will; and, finally, that such will and codicil constitute the last will and testament of testatrix.

Both sides have presented various points and counter points, but we believe the main question in this controversy is whether or not the codicil of July 31, 1951 effectively republished and reaffirmed the 1948 will, thereby revoking the July 10th holographic will, which the jury found to be in testatrix's own handwriting. We will, therefore, endeavor to discuss this matter on that basis, and with a general, rather than specific, approach to the problem.

■ First of all, it must be borne in mind that, in the wide realm of legal instruments, the courts of this state and all other states go farther, and try harder, to ascertain the intent of the maker of an instrument when it is a will, than is done in any other type of controversy involving the contents of a legal document. This is naturally and rightfully so, because a will—by its very nature—is not only a very important document, but also occupies the peculiar position, always, that the maker of the same—in other words, the testator—is dead and cannot be called upon to explain any of the contents of the instrument, or to relate what his intentions were when he executed the instrument. Therefore, the intent of the testator is, perhaps, the most important feature in any controversy involving a will.

We think it worth-while here to consider, for a moment, the intent of the testatrix, Nellye Bell Coles. This is not a difficult task, because the will of 1948 is perfectly clear and lucid, and shows, by its very contents, that it was prepared by a competent attorney. This will leaves nothing to the appellant. The record here is replete with exhibits showing that appellant, through the years, had accused her aunt (the testatrix) of murder, forgery, theft and other crimes. The record shows that this embarrassment and humiliation caused testatrix to tell several people that she did not want appellant to ever have any of her property when she died. The record shows that many prominent and reputable people testified that testatrix was actually a wom-

an of fine character and excellent reputation. Further, in July of 1951, while testatrix and a friend were visiting in Santa Barbara, California, appellant called on the District Attorney and Sheriff and, according to the record, told R. B. Romero, undersheriff of Santa Barbara County, that her aunt, Mrs. Coles, had killed her mother by starving her to death. Then, on the following day—July 5th—appellant again called on Mr. Romero and said she had received an holographic will signed by her aunt. This, of course, turned out to be the July 6th instrument. This is odd because, of course, the testatrix was not dead, the instrument was undated when produced on July 5th, and it later turned up in court bearing the date of July 6, 1951; and it is not clear what appellant's purpose was in presenting the will allegedly written by testatrix. It appears that Mrs. Coles denied these things, and gave Mr. Romero samples of her handwriting and mentioned to him that her will had been drawn by her attorney, Mr. J. F. Hulse, in El Paso. Mr. Romero further testified that Mrs. Coles stated that she was afraid that her niece would endeavor to harm her physically. Apparently the two parties—testatrix and appellant—never actually met at that time in California. Testatrix immediately packed up and left Santa Barbara. Upon her return to El Paso, it appears that Mrs. Coles and her attorney, Mr. Hulse, had several conferences, resulting in the execution of the codicil hereinabove set out. It is apparent from the language of this codicil that she denies ever writing any holographic will, and states flatly that no part of her estate should go to appellant. Testatrix executed this codicil in 1951; and, during the remainder of her life—approximately five years—there is no record that she ever made any attempt to make any changes. Therefore, in the two instruments prepared by her legal counsel, her testamentary intent is extremely clear. From 1948 until 1956—the time of her death—she never changed her will except by the purported holographic instruments.

The record shows that appellant had written many letters to El Paso people defaming testatrix, and that testatrix knew it. Outside of the fact that appellant was her niece, the record shows no reason whatever for Mrs. Coles to be disposed kindly toward her niece, or to have any desire to leave anything to her, for she was the person who had accused the testatrix of so many crimes and misdeeds, and actually frightened her away from Santa Barbara in 1951, after having subjected her there to interviews by law enforcement authorities. It is interesting to speculate as to who prepared the July 6th holographic instrument. The jury said that Mrs. Coles did not write it. Then, who did? It is full of intimate family history, names and details, and leaves everything to her niece, the appellant here. The jury then went on and said that the July 10th instrument was wholly in Mrs. Coles' handwriting—an instrument which left everything to a person she had openly professed to dislike and did not want to have any of her property. So, here, there can be no doubt that her testamentary intent was that the 1948 will was the way she wanted her property distributed, and she expressly did not want appellant to have any of it. There is no evidence in the record, anywhere, that Mrs. Coles was anything other than a respected, capable woman. There is no suggestion of eccentricity, insanity, or lack of testamentary capacity. Therefore, the holographic instrument which the jury found she wrote, is in absolute conflict with that which she had prepared by her attorney; contrary to the very realities of the situation; and eliminates every bequest to charitable institutions, religious organizations, and various individuals. It must be noted, too, that if she had written either holographic instrument, there would have been no reason why she could not have said so in the codicil; but, instead, she denied flatly having executed any holographic instrument. We

therefore believe that her intent was to leave her property in accordance with the provisions of the 1948 will and the 1951 codicil.

Appellant challenges the legality of her attempt to so do.

On the basis of the authorities and authors hereinafter set forth, we have reached the conclusion that the trial court was correct in his judgment. In Aven v. Green, 320 S.W.2d 660, 662, the Supreme Court states:

"If the codicil here under review was validly executed and republishes the prior will, proof of the codicil will operate also to establish the will without further proof."

The case of Breeden v. Miller, Tex.Civ. App., 236 S.W.2d 225 (no writ history), holds that an invalid will can be reaffirmed by a codicil, which has the effect of re-dating the void will as of the time of the execution of the codicil. To the same effect is Everett v. Everett, Tex.Civ.App., 309 S.W.2d 893, where the court held that a properly executed codicil republished a former instrument as a will, and said will then spoke from the date of the codicil. This matter is discussed, also, in Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731, although the instrument there was not a proper or sufficient codicil. The Supreme Court states, in the Hinson case, that it is well settled that a properly executed and valid codicil which contains a sufficient reference to a prior will, operates as a republication of the will in so far as it is not altered or revoked by the codicil; the will and codicil are then to be regarded as one instrument speaking from the date of the codicil. The codicil in the case, however, was totally deficient, legally speaking. Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326; Laborde v. First State Bank & Trust Co. of Rio Grande City, Tex. Civ.App., 101 S.W.2d 389 (wr. ref.). The

court also points out that most jurisdictions have held that a properly executed codicil validates a prior will which was inoperative or invalid because of defective execution, lack of testamentary capacity, or undue influence. See also, Campbell v. Barrera, Tex.Civ.App., 32 S.W. 724.

Applying the above authorities to the matter before us, it is clear that we have here a codicil that is properly executed and witnessed, and such is not contested or denied. Also, this codicil expressly reaffirms the 1948 will by adequate reference and description. The codicil goes on to say that it is executed in order "that my said will, dated June 26, 1948, be assured of being admitted to probate." Also, the codicil says as follows:

"I further declare that my last will and testament is the last will and testament prepared for me at my request by J. F. Hulse, of El Paso, Texas, and executed by me on June 26, 1948 in the presence of J. L. Rasberry and Gladys Horton as attesting witnesses."

We believe this is sufficient to incorporate and republish the 1948 will. Certainly, the intention of the testatrix is clearly set forth. Appellant argues that there is a difference between a republication of an invalid will and a will that has been revoked. We do not find such distinction, nor can we see the necessity or propriety of creating any such distinction. If, as here, the codicil sufficiently describes and reaffirms the former will, and such codicil, as here, has been properly and duly executed and witnessed, we believe the former will, whether invalid, revoked, or unexecuted, is validated as of the date of the codicil. Therefore, the last will and testament of the testatrix, Nellye Bell Coles, consisted of the 1948 will and the 1951 codicil. To hold otherwise would be to defeat her very obvious intention. This matter is discussed in 57 American Juris-

**24**

prudence at page 428, section 626. This text is as follows:

"Republication by Codicil—A duly executed codicil operates as a republication of the original will and makes it speak from the new date, in so far as it is not altered or revoked by the codicil, although the codicil is not physically annexed to the will, and although the will is not in the presence of the testator at the time of executing the codicil, where it refers to the will in such a way as to identify that instrument beyond doubt. If a codicil revokes in terms portions of the will, it republishes the will as of the date of the codicil in respect of all parts not revoked.

"Since the execution of a valid codicil to a will constitutes a republication of the will, the latter is governed by a statute which was enacted subsequently to the execution of the will but was operative when the codicil was executed. For example, a devise in remainder which was void under the statute of perpetuities is validated by a codicil duly executed after the repeal of the statute. Important consequences of the republication of a will by the execution of a codicil are the revival of a will previously revoked and the validation of alterations made in the will subsequently to its execution but prior to the execution of the codicil. *Not only may a codicil revive a will which has been revoked by an intervening will, but it may itself operate as a revocation of the intervening will.* But the rule that a codicil draws a will down to its own date is subject to the limitation that the intention of the testator must not be defeated by its application. It does not operate to revive a legacy which has been satisfied or adeemed. The effect of the principle that a codicil republishes the will in determining whether a codicil can be deemed to revoke by implication the provisions of the will which are inconsistent with the codicil, is hereinbefore considered." (Emphasis ours.)

Also, in 33 A.L.R.2d 925, that particular text states:

"* * * no case has been found in support of the proposition that the revival of a will or codicil which has been revoked, but which is in existence, cannot be effected by means of a subsequent codicil."

Here, the codicil refers to a present, available and duly executed will.

Appellants have urged that the case of Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 248, supports their position; but, in that case the court was dealing with an holographic will which could not be produced, and an attempt was made to probate the original will; the court holding that if the holographic will actually had been executed, then the original will was revoked, and the mere destruction of the holographic will would not automatically revive the revoked will. The court says:

"The statute itself forecloses the issue of the revival of a revoked will. Under it a will once revoked is at an end. Nothing short of a new will, a new execution, and *a new publication of it* as a will will give it validity and admit it to probate." (Emphasis ours).

And the court clearly says that a new publication of "it" as a will will give it validity and admit it to probate. Certainly the words, "a *new* publication of it as a will", could not, and were not intended to, apply to a *new* will, but could only apply to the revoked will, about which the court is speaking. When these conditions are met, a new will is created, comprised of the old, revoked one and the codicil, which then speaks from the date of the codicil. We cannot overlook, also, that this duly executed codicil is the last instrument of this nature executed by testatrix. Her testamentary intent is certainly clear, and she categorically denies ever having executed an holographic will. We cannot believe

that this codicil is an instrument without meaning or effect, and that the intentions of the testatrix should be defeated.

In an early case—Dougherty v. Holscheider, 40 Tex.Civ.App. 31, 88 S.W. 1113, 1117 (writ dismissed)—the court there said:

> "The execution, therefore, of a subsequent will, a codicil, or declaration in writing, has the effect to annul and revoke a former will, and that revocation would take place upon the publication of the paper, regardless of what might afterwards become of it, and a republication of the former will would be necessary to give it vitality, no matter whether the later will was destroyed or became inoperative. This doctrine is sustained by the weight of English and American authority."

██ Therefore, in view of the fact that the codicil here complies with all the formalities and requirements of the Texas statutes, and is precise and adequate in its terms, we hold that it does republish and reaffirm the 1948 will.

This would seem to us not only the right legal result, but the proper equitable result, as well; for we do not see any valid reason why a revoked will cannot be republished and reaffirmed by a properly executed and adequate codicil. Surely, if a codicil can give life and validity to a will heretofore invalid and lifeless, it should be permitted to revive a will made lifeless by revocation. What justifiable distinction can there be between giving life to that which never had it, or that which lost it? It is the duty of the courts, wherever possible, to give effect to the intention of the testator, and we think that the intent is clearly set forth here, and legally presented.

Appellee has urged, among other things, that there was insufficient evidence to support the jury's finding that the July 10th will was wholly in the handwriting of the testatrix. We do not pass upon that point in this opinion, as we feel that our disposition of the case makes it unnecessary. Should we be found wrong, and the case sent back, we can then take up the matter of the sufficiency of the evidence. For the same reason, we do not pass upon other points by the parties, as they are not concerned with the legality and effect of the codicil.

The decision of the trial court is affirmed.