Milton J. GROSSMAN, Independent Executor of the Estate of James A. Stavely, Deceased, et al., Appellants,

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue, Appellee.

No. 22303.

United States Court of Appeals
Fifth Circuit.

Aug. 29, 1966.

On Petition for Clarification of Opinion
and for Rehearing
Oct. 28, 1966.

---

Neil J. O'Brien, Wynne, Jaffe & Tinsley, Dallas, Tex., for appellants.

John B. Jones, Jr., Acting Asst. Atty. Gen., Loring W. Post, Lee A. Jackson, Herbert Grossman, Attys., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Dallas, Tex., Martha Joe Stroud, Asst. U. S. Atty., of counsel, for appellee.

Before RIVES and BELL, Circuit Judges, and FULTON, District Judge.

RIVES, Circuit Judge:

The Executor and distributees of the Estate of Mr. James A. Stavely, deceased, brought this suit to recover estate taxes claimed to have been erroneously collected. The district court decided all issues adversely to their contentions.[1] We reverse in part and affirm in part.

Most of the basic facts are not in dispute. Mr. and Mrs. James A. Stavely were married in 1931. They had no children of their own but Mrs. Stavely had two children by a prior marriage, and through these children she had three grandchildren.

Mr. and Mrs. Stavely executed substantially identical wills in 1949. After certain specific bequests, each will contained a provision leaving essentially the entire estate to the survivor. On the survivor's death the remaining estate was to go to Mrs. Stavely's two children.

On April 29, 1954, Mrs. Stavely wrote out and signed a holographic instrument leaving the bulk of her estate in five (5) equal shares to her two children and three grandchildren. However, on May 15, 1954, Mr. and Mrs. Stavely both formally executed substantially similar codicils to their 1949 wills. These codicils made only very minor changes in the 1949 wills.

Mrs. Stavely died July 19, 1955. After the holographic instrument was discovered, a conference was held between Mr. Stavely and Mrs. Stavely's two children at which the family attorney, Morris I. Jaffe, Esq., was present. Appellants contend that an oral agreement was reached at that time between Mr. Stavely and Mrs. Stavely's two children, whereby Mr. Stavely was to receive the use of Mrs. Stavely's property for life with the remainder in his and Mrs. Stavely's estate going to the two children in return for their not attempting to probate the holographic will. It is the tax effect of that oral agreement on *Mr.* Stavely's estate that is one of the main questions in this case.

Subsequent to the meeting, Mr. Jaffe prepared a memorandum which it is now claimed reflected only part of the alleged oral agreement. Although it was presented to him several times, Mr. Stavely never signed it.[2] The memorandum, like the holographic will, would have required Mr. Stavely to leave his estate in five equal shares to Mrs. Stavely's two children and three grandchildren. Mr. Stavely died in 1959 and his estate passed under his 1949 will and 1954 codicil to Mrs. Stavely's two children.

In the district court appellants contended that because of the oral agreement Mr. Stavely received only a life estate in

---

1. The opinion of the district court is not reported.

2. The memorandum completely restricts Mr. Stavely's use of his property as well as that received from Mrs. Stavely. It is easy to understand why he never signed

such an agreement. Of course, anything short of such an agreement would make the alleged settlement virtually meaningless. There is no evidence that Mr. Stavely ever indicated how the memorandum could be altered to properly reflect the alleged oral agreement.

Mrs. Stavely's property with a remainder passing to her two children. Two arguments were predicated on this contention. The first was that since Mr. Stavely received only a life estate, Mrs. Stavely's property never entered his estate and, therefore, no estate tax on Mrs. Stavely's property should have been paid by Mr. Stavely's estate. Second, it was argued that Mr. Stavely's estate should not be taxed because under the oral agreement Mr. Stavely sold the remainder interest and thus nothing remained for estate tax purposes. Also involved here is the question of the alleged oral agreement's effect on insurance policies covering Mr. Stavely's life and paid to Mr. Stavely's executor.

In addition to the question presented by the alleged oral agreement, there is a question of construing Mrs. Stavely's will. If she gave Mr. Stavely only a life estate in her interest in their home, then that interest would not be includable in Mr. Stavely's estate.

## I.

### The Alleged Oral Agreement.

The determining issue must be: Was there an actual dispute as to the validity of the 1949 will out of which a good faith, valid and bona fide settlement arose? If there was no such dispute and settlement, then the district court is correct and the government should prevail.[3] Commissioner of Internal Revenue v. Vease's Estate (9 Cir. 1963), 314 F.2d 79 at 86–87; Bailey v. Ratterre (N.D.N.Y. 1956), 144 F.Supp. 449 at 452–453, aff'd, 243 F.2d 454 (2 Cir. 1957).

We must look to Texas law to determine whether the holographic instrument, executed prior to Mrs. Stavely's republication of her will by the May 15, 1954 codicil, could create a genuine dispute.

In Wade v. Sherrod, 342 S.W.2d 17 (Tex.Civ.App.1961) error refused, n. r. e., the Court of Civil Appeals had before it the following (342 S.W.2d at 21):

"[T]he main question in this controversy is whether or not the codicil of July 31, 1951 effectively republished and reaffirmed the 1948 will, thereby revoking the July 10th holographic will, which the jury found to be in testatrix's own handwriting."

The Court thought that under Texas law the answer was clear. A codicil republishes the former will to which it refers as of the date of the codicil and voids all intervening wills, including holographic wills. In Hinson v. Hinson, 154 Tex. 561, 280 S.W.2d 731 at 735 (1955) the Court said:

"It is well settled, however, that a properly executed and valid codicil which contains a sufficient reference to a prior will, operates as a republication of the will in so far as it is not altered or revoked by the codicil; the will and codicil are then to be regarded as one instrument speaking from the date of the codicil."

Accord, Newsome v. Carpenter, 382 S.W. 2d 350 (Tex.Civ.App.1964).[4]

Implicit in the findings of fact and conclusions of law of the district court is the belief that no valid dispute existed between the parties. Texas law is well settled on the invalidity of the holographic will involved in the instant case. In spite of testimony to the contrary, it stretches credibility to ask this Court to believe that anyone really thought that the holographic will could have prevented the later codicil and the written 1949 will from being probated as Mrs. Stavely's only will.

Even if some slight question was created as to the effect of the holographic instrument, the district court's finding that no real settlement was ever made

---

3. If there was a good faith, bona fide settlement of a valid dispute, then under the doctrine of Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) the appellants should prevail.

4. In the present case there is no dispute over the fact that the 1954 codicil was properly executed, valid and contained a sufficient reference to the 1949 will.

would have to be affirmed.[5] There is no convincing evidence that a good faith, valid and bona fide agreement was ever made.

If there was a real dispute, it is most unlikely that the potential heirs would trust to divine providence to protect their interests. Once the codicil and the 1949 will were admitted to probate, all leverage would be lost. Experience teaches that under these conditions potential heirs will exact a binding written agreement.[6]

In the instant case Mr. Stavely never changed his will to conform to the holographic will or in any other way altered his position. This inaction negatives any contention that he intended to alter his estate disposition originally adopted in 1949.

The memorandum which Mr. Stavely did not sign, like the holograph, would have given Mr. Stavely's estate in five equal parts to Mrs. Stavely's children and grandchildren and not just to her children. If Mr. Stavely promised in the alleged oral agreement to leave his estate only to Mrs. Stavely's children, then he would have promised no more than his will already provided. The vagueness of the alleged agreement, the fact that it was not reduced to writing, the fact that Mr. Stavely never altered his position— all lead us to conclude that there was no actual dispute or valid, bona fide settlement. At best the parties may have believed that the holographic will represented Mrs. Stavely's latest possible desires and decided to effectuate those desires by having the children on Mr. Stavely's death reallocate the proceeds they received from his estate. "The resulting agreement was nothing more than a voluntary rearrangement of property interests acquired under an admittedly valid will, concluded without duress of unsatisfied claims." Commissioner of Internal Revenue v. Vease's Estate (9 Cir. 1963), 314 F.2d 79 at 87. Both Mr. and Mrs. Stavely's wills remained valid and such voluntary rearrangements within the family unit are not sufficient to prevent the proper imposition of estate tax.[7] The district court therefore reach-

5. When referring to the settlement, the district court used such terms as "the alleged oral agreement" or "assuming that the alleged oral agreement was valid." There was no finding that a settlement was ever made, nor can appellants erect the language of the district court, above quoted, into a finding of a valid, good faith or bona fide settlement. The district court did find that if there was an agreement, "the alleged oral agreement" was not "bona fide" or "arm's length."

6. See Lyeth v. Hoey, 305 U.S. 188, 59 S. Ct. 155 (1938) and its progeny. Reed v. Commissioner of Internal Revenue, 36 F.2d 867 (5 Cir. 1930) is not apposite. In the Reed case there was no will contest and settlement. The children received a vested interest in their mother's property. Pursuant to a family agreement, they deeded property to their father. To show his good faith in carrying out an oral trust agreement, he then executed a formal will which carried into effect the terms of the oral trust agreement. [As to the possible tax effect of such an arrangement under present law, see Commissioner of Internal Revenue v. Vease's Estate, 314 F.2d 79 (9 Cir. 1963).]

7. In Bailey v. Ratterre (N.D.N.Y.1956), 144 F.Supp. 449 at 453, Chief Judge Brennan, speaking for the Court, said: " * * * the compromise of a will contest must be based upon something more than a naked threat. Some evidence beyond the mere retention of an attorney and some recognition of the existence and disposal of the threat to an estate must be shown. A desire to avoid family friction may well prompt a settlement but to recognize such desire as the basis for a contest compromise leaves an open door to tax evasion." In Reed's Estate v. Commissioner of Internal Revenue, 171 F.2d 685 (8 Cir. 1948), the Eighth Circuit said that to qualify as a proper settlement a "controversy" must be "clearly defined," "real and substantial." In Reed's Estate the surviving spouse claimed that a new state statute gave her a right to a fee simple in one third of her husband's estate. With the exception of dower, the children claimed the full fee in all property under their father's will, contending the statute was unconstitutional. The parties did not litigate but settled. By the time the federal estate tax case reached the Eighth Circuit, the Supreme Court of Nebraska had in fact declared unconstitutional the statute under which the surviving spouse claimed a fee simple.

ed the correct result as to both the tax on Mr. and Mrs. Stavely's estates and the tax on the insurance proceeds.[8]

## II.
### Mrs. Stavely's Interest in Their Home.

In her 1949 will Mrs. Stavely included the following:

"I give, devise and bequeath to my beloved husband, JAMES A. STAVELY, all my right, title and interest in and to our home at 6630 Robin Road, Dallas, Texas, including all the fixtures and appurtenances thereto, as well as all furnishings and effects therein."

Article III, Paragraph (k) of the will provided:

"(k) Upon the death of my husband, should he survive me, I direct that our homestead and all of the furniture and fixtures therein shall be sold by my executor, hereinafter named, and that the money received therefrom shall be equally divided between my daughter, Laverne Grossman, and my son, Samuel King."

Appellants contend that if the two above-quoted paragraphs are construed together, Mr. Stavely received only a life interest in Mrs. Stavely's interest in their home. Whether federal estate tax applies depends on the powers that Mr.

Stavely received from his wife. To determine what powers he received, we must look to state law. In this regard it is important to emphasize that the federal estate tax does not depend on the label that a state places on a transfer but on the powers that the deceased actually had.[9]

If he had the power to sell or give away the property and treat it as his own, squandering it as he wished, then for estate tax purposes, whatever label the state gives such powers,[10] there is a tax imposed.[11] But if he did not receive the power to convey or sell the property, that is to say an unrestricted power of disposition, then no estate tax attaches. Phinney v. Kay, 275 F.2d 776 (5 Cir. 1960).

Unfortunately there are no Texas cases directly in point. The case most strongly in favor of the government's contention that Mr. Stavely received an unrestricted power of disposition over his wife's interest in their home is Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876 (1949). In that case property was left by a wife under a joint and mutual will to her husband for his "sole use and benefit." The will went on to dispose of all the property of which the survivor, husband, died "seized and possessed."

The husband remarried and then conveyed the property to his second wife, re-

---

8. Mrs. Stavely's 24.53% interest in the cash surrender value of these policies, representing her community interest therein, was taxed in her estate. Mr. Stavely's estate was allowed a credit in the amount of $11,547.07 for taxes paid on a prior transfer under section 2013 of the Internal Revenue Code of 1954. Section 2042 of the Internal Revenue Code of 1954 was properly applied in this case.

9. In Morgan v. Commissioner of Internal Revenue (1940), 309 U.S. 78 at 80–81, 60 S.Ct. 424 at 426, 84 L.Ed. 585, the Supreme Court said: "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. [This Court's] duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law

was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

10. Depending on the exact wording of the will and the context of the case, Texas courts have tended to give different names to an estate that gives a spouse unrestricted power of disposition during his life and gives to a second person whatever is left on the spouse's death. Cf. Cammack v. George, 377 S.W.2d 687 (Tex.Civ.App.1964) (A "life estate" "coupled with the power in the survivor to dispose of the fee before his death or remarriage.") with Boyett v. Mathews, 370 S.W.2d 916 (Tex.Civ.App.1963) ("a fee simple title subject to defeasance.")

11. Phinney v. Kay, 275 F.2d 776 (5 Cir. 1960) ; Sections 2041 and 2033 of the Internal Revenue Code of 1954.

taining only a life estate. The heirs attacked the transfer as not bona fide and being solely to avoid the joint and mutual will. The Supreme Court of Texas held that under the joint and mutual will the husband was empowered to do with the property as he pleased during his life, including giving away a remainder or selling it. The cornerstone of the Court's rationale was the fact that the joint and mutual will applied only to the property of which the husband died "seized and possessed," and thus did not apply to property when a gift or sale had ended his possession.[12]

This Court followed the *Harrell* case in Phinney v. Kay, 275 F.2d 776 (5 Cir. 1960). *Phinney* involved a will that gave an estate "to be used, occupied, enjoyed, *conveyed* and *expended* by, and during the life of such survivor." (Emphasis added.) This Court held that under Texas law the survivor received an unrestricted power to dispose of the property and that this was sufficient power to come under the purview of section 2041 of the Internal Revenue Code of 1954.

But the present case does not quite fit the pattern. If we read the first paragraph alone, Mr. Stavely would have received a fee simple title with the absolute right to sell the home because Mrs. Stavely gave him "all my right, title and interest in and to our home." But the later paragraph directs that on Mr. Stavely's death the "homestead and all the furniture and fixtures therein" be sold and the money go to certain named beneficiaries.

■ The rule for construing such contradictory clauses was succinctly stated

in McMurray v. Stanley (1887), 69 Tex. 227, 6 S.W. 412 at 413, as follows:

"In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument."

Accord, First National Bank of Corsicana v. DeFoe (Tex.Civ.App.1964), 384 S.W. 2d 926 at 928; Ellis v. Bruce (Tex.Civ. App.1956) 286 S.W.2d 645 at 649. What Mr. Stavely took under the first paragraph, he took subject to the second paragraph.

Several factors convince us that this case is not like *Harrell*. In *Harrell* and all the cases that have followed it, the persons who took on the death of the first survivor took only whatever property remained. The residuary clauses of the two essentially identical wills of Mr. and Mrs. Stavely, when taken together, have this effect. The property is left to whoever survives and on that person's death whatever property the survivor dies "seized or possessed" of then passes to Mrs. Stavely's children.

■ Clause (k) dealing with the "homestead" is restricted to a specific piece of property. Clause (k) does not say "if my husband dies seized or possessed of a homestead then the same shall be sold with the proceeds going to my children." Instead, it contemplates that the homestead shall be in existence "upon the death of my husband," and directs in absolute terms "that our homestead and all of the furniture and fixtures therein shall be sold." Since Mrs. Stavely's will contemplated that the

12. In Phinney v. Kay (5 Cir. 1960), 275 F.2d 776 at 780, we quoted the following as the significant holding in *Harrell*:
"In the instant case the testators in language free of ambiguity have clothed the survivor with the unqualified *right to convey* the property during his or her lifetime and have limited the rights of the remaindermen to *whatever estate remained in the survivor at his or her death,* and we are not authorized to impose a limitation upon that right or by implication to grant any right to the remaindermen other than to acquire that which might remain after the death of the survivor." (Emphasis added.)

homestead would be intact at Mr. Stavely's death, we hold that he received only the use and control of Mrs. Stavely's interest in their home but not the unrestricted power to dispose of it. It follows then that as to Mrs. Stavely's interest in their homestead, Mr. Stavely did not receive sufficient powers to bring this grant within the purview of section 2041.

A word of caution may be noted. It is obvious that one of the reasons the government has so steadfastly objected to any construction of Mrs. Stavely's will which would prevent the application of section 2041 is the fear that this bequest will escape all estate taxes. The fear is that a bequest of this nature will be allowed to qualify under the marital deduction[13] and at the same time escape taxation in the survivor's estate under the rule we announce today. But the very rationale of our decision will prevent that incorrect result. If a bequest involves only limited powers, as here, no matter what name the state law ascribes to those powers, it does not qualify for the marital deduction.[14] Where the spouse does receive the unrestricted right to dispose of the property during his life, no matter what name the state law ascribes to those powers, the bequest qualifies for the marital deduction but is included in the survivor's estate.

The judgment of the district court is, therefore, affirmed in part and reversed in part and the case remanded for a proper determination of the refund due in accordance with this opinion.

Affirmed in part and in part reversed.

### ON PETITION FOR CLARIFICATION OF OPINION AND FOR RE-HEARING

PER CURIAM:

Appellants insist that Articles II and III(k) of Mrs. Stavely's will, which are quoted at the beginning of part II of our opinion, put Mr. Stavely to an election, that he elected to take under the will, and hence that his estate is entitled to a deduction under 26 U.S.C.A. § 2043(a) as construed in Vardell's Estate v. C. I. R., 5 Cir. 1962, 307 F.2d 688. Our opinion on original hearing does not cover that issue.

The pertinent rule of construction has been well stated as follows:

"Where a testator was only part owner of property disposed of by will, the question as to whether the other part owner, having accepted the provisions of the will, is to be deemed to have elected to renounce his rights as co-owner depends on the showing as to whether the testator intended to dispose of the entire property. The court will presume primarily that the testator intended to confine the devise or bequest to his part of the property, and where the language of the will is ambiguous in this respect the instrument should be considered as referring only to the interest that the testator might lawfully dispose of.

"Since the law will deprive no person of his property by conjecture, a testator will be deemed to have intended to dispose of both his and his co-owner's share of property only where the intention is expressed in the will in clear and unequivocal language that is open to no other reasonable construction."

61 Tex.Jur.2d § 276, Wills.[1]

Article II of Mrs. Stavely's will was expressly limited to "all my right, title and interest" in their home, the fixtures, appurtenances, furnishings and effects. It seems clear that Article III (k) should be similarly construed. Mrs. Stavely did not undertake to dispose of

13. See Awtry's v. Commissioner of Internal Revenue, 221 F.2d 749 (8 Cir. 1955).

14. See section 2056 of the Internal Revenue Code of 1954 and its accompanying Treasury Regulations, 20.2056(b).

1. See also Avery v. Johnson, 1917, 108 Tex. 294, 192 S.W. 542; Ford v. Bachman, Tex.Civ.App.1947, 203 S.W.2d 630; Ottenhouse v. Paysinger, Tex.Civ.App.1951, 244 S.W.2d 714; 96 C.J.S. Wills § 751.

Mr. Stavely's property by her will, and he was not put to any election. With the opinion so clarified, the petition for rehearing is

Denied.